Moez M. Kaba, State Bar No. 257456
mkaba@hueston.com
Allison L. Libeu, State Bar No. 244487
alibeu@hueston.com
Sourabh Mishra, State Bar No. 305185
smishra@hueston.com
HUESTON HENNIGAN LLP
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone:    (213) 788-4340
Facsimile:    (888) 775-0898

*Attorneys for Defendants Shopify Inc.
and Shopify (USA) Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAEEM SEIRAFI, EDWARD BATON, ANTHONY COMILLA, BRETT DEENEY, and ABRAHAM VILINGER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>LEDGER SAS, SHOPIFY (USA) INC., SHOPIFY INC., and TASKUS, INC,<br><br>Defendant. | Case No. 3:21-cv-02470-EMC<br><br>Hon. Edward M. Chen<br><br>**DEFENDANTS SHOPIFY INC. AND SHOPIFY (USA) INC.'S COMBINED NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Hearing Date: March 14, 2024<br>Hearing Time: 1:30 p.m.<br>Courtroom: 5 |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ........................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 1

I.    INTRODUCTION ................................................................................................................. 1

II.    ISSUES TO BE DECIDED .................................................................................................. 4

III.    BACKGROUND .................................................................................................................. 4

    A.    The Shopify Defendants and Their Business ........................................................... 4

    B.    Criminals Steal Ledger Customer Information from TaskUs and Shopify, Inc. ........................................................................................................... 5

    C.    Jurisdictional Discovery Revealed that Mr. Narayanadas Worked Remotely from California Solely for Personal Reasons ......................................... 5

IV.    ARGUMENT ........................................................................................................................ 7

    A.    This Court Does Not Have Personal Jurisdiction Over the Shopify Defendants ................................................................................................................ 7

        1.    The Shopify Defendants Did Not Expressly Aim Their Activities at California ....................................................................................... 8

        2.    The Shopify Defendants Did Not Purposefully Avail Themselves of California ...................................................................................... 11

        3.    Exercising Specific Jurisdiction Over the Shopify Defendants Would Be Unreasonable ..................................................................... 13

    B.    This Case Must Be Dismissed Pursuant to a Forum Selection Clause Requiring Disputes Be Brought in France ............................................................. 16

        1.    Plaintiffs' Claims Against the Shopify Defendants Are Closely Related to the Ledger Contracts ................................................... 17

        2.    Plaintiffs Cannot Meet Their Burden to Show Extraordinary Circumstances to Prevent Enforcement of the Forum Selection Clause .......................................................................................... 19

    C.    Plaintiffs Fail to State a Claim Upon Which Relief Can Be Granted ................... 20

        1.    Plaintiffs Fail to Plead an Actionable Legal Duty and Causation Required for Their Negligence, Negligence Per Se, and Equitable Relief Claims ........................................................ 20

        2.    Plaintiffs Fail to Plead Deceptive Action Toward Consumers as Required to Maintain Their NYGBL Claim ......................................... 23

V.    CONCLUSION ................................................................................................................... 25

SHOPIFY DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

6390933

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*AMA Multimedia, LLC v. Wanat*,
  970 F.3d 1201 (9th Cir. 2020) ................................................................. 11

*Amoco Egypt Oil Co. v. Leonis Nav. Co., Inc.*,
  1 F.3d 848 (9th Cir. 1993) .......................................................... 13, 14, 15

*Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal., Solano Cnty.*,
  480 U.S. 102 (1987) ............................................................................. 14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................. 20

*Athena Cosmetics, Inc. v. U.S. Warehouse*,
  2020 WL 1969260 (C.D. Cal. Mar. 5, 2020) ............................................. 9

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*,
  571 U.S. 49 (2013) ......................................................................... 16, 19

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
  874 F.3d 1064 (9th Cir. 2017) ................................................................ 9

*Baton v. Ledger SAS*,
  2021 WL 5226315 (N.D. Cal. Nov. 9, 2021) ...................................... 5, 7, 8

*Baton v. Ledger SAS*,
  2022 WL 17352192 (9th Cir. Dec. 1, 2022) ..................................... Passim

*Bell v. Hawaiian Airlines, Inc.*,
  147 F. App'x 643 (9th Cir. 2005) .......................................................... 17

*Bertolini-Mier v. Upper Valley Neurology Neurosurgery, P.C.*,
  2017 WL 4081901 (D. Vt. Sept. 13, 2017) ............................................. 12

*Boschetto v. Hansing*,
  539 F.3d 1011 (9th Cir. 2008) ................................................................ 7

*Briskin v. Shopify, Inc.*,
  87 F. 4th 404 (9th Cir. 2023) ........................................................ Passim

*Brown v. USA Taekwondo*,
  11 Cal. 5th 204 (2021) ......................................................................... 21

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) ............................................................................. 13

SHOPIFY DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

6390933

*Callahan v. Wisdom*,
2020 WL 2061882 (D. Conn. Apr. 29, 2020) ................................................................. 12

*Carpenter v. So. Airways Express*,
2021 WL 5937749 (S.D. Ohio Dec. 16, 2021)................................................................. 12

*Chattopadhyay v. Evolve Vacation Rental Network, Inc.*,
2023 WL 6199181 (N.D. Cal. Sept. 21, 2023) ................................................................. 7

*Christianson v. Colt Indus. Operating Corp.*,
486 U.S. 800 (1988) ......................................................................................................... 8

*Citizens Bank of Pa. v. Reimbursement Techs., Inc.*,
2014 WL 2738220 (E.D. Pa. June 17, 2014) ................................................................. 23

*Columbia Sussex Mgmt., LLC v. City of Santa Monica*,
2021 WL 3737698 (C.D. Cal. Aug. 24, 2021) ................................................................. 8

*Core-Vent Corp. v. Nobel Indus. AB*,
11 F.3d 1482 (9th Cir. 1993).................................................................................... 14, 15

*Dawson v. Cagle Cartoons, Inc.*,
2013 WL 4829317 (E.D. Cal. Sept. 9, 2013) ................................................................. 18

*Fields v. Sickle Cell Disease Assoc. of Am., Inc.*,
376 F. Supp. 3d 647 (E.D.N.C. 2018) ........................................................................... 11

*Fields v. Sickle Cell Disease Assoc. of Am., Inc.*
770 F. App'x 77 (4th Cir. 2019)..................................................................................... 11

*Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.*,
141 S. Ct. 1017 (2021) ................................................................................................... 13

*Gonzalez v. US Human Rights Network*,
512 F. Supp. 3d 944 (D. Ariz. 2011)....................................................................... 3, 11, 12

*Griffey v. Magellan Health Inc.*,
562 F. Supp. 3d 34 (D. Ariz. 2021) ............................................................................... 24

*Hanna Boys Ctr. v. Miller*,
853 F.2d 682 (9th Cir. 1988)........................................................................................... 8

*Holland Am. Line Inc. v. Wartsila N.A., Inc.*,
485 F.3d 450 (9th Cir. 2007)................................................................................... 17, 18

*In re GEICO Customer Data Breach Litig.*,
2023 WL 4778646 (E.D.N.Y. July 21, 2023) ......................................................... 24, 25

- iii -

6390933

*In re Sling Media Slingbox Advert. Litig.*,
   202 F. Supp. 3d 352 (S.D.N.Y. 2016) ....................................................................... 25

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
   2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ........................................................... 18

*Insurance Co. of N. Am. v. Marina Salina Cruz*,
   649 F.2d 1266 (9th Cir. 1981) .................................................................................. 14

*Jackson v. Airbnb, Inc.*,
   654 F. Supp. 3d 990 (C.D. Cal. 2023) ................................................................. 21, 22

*Jesse v. Malcmacher*,
   2016 WL 9450683 (C.D. Cal. Apr. 5, 2016) .............................................................. 22

*M/S Bremen v. Zapata Off-Shore Co.*,
   407 U.S. 1 (1972) ...................................................................................................... 19

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*,
   858 F.2d 509 (9th. Cir. 1988) ......................................................................... 3, 16, 17

*Martinez v. Pacific Bell*,
   225 Cal. App. 3d 1557 (1990) .................................................................................... 22

*Matyas v. Summerkids, Inc.*,
   2023 WL 7108818 (C.D. Cal. Apr. 24, 2023) ............................................. 3, 20, 21, 22

*McNally v. Kingdom Tr. Co.*,
   2020 WL 7786539 (C.D. Cal. Nov. 13, 2020) ........................................................... 17

*Mendoza v. City of Los Angeles*,
   66 Cal. App. 4th 1333 (1998) .................................................................................... 22

*Modisette v. Apple, Inc.*,
   30 Cal. App. 5th 136 (2018) ...................................................................................... 23

*Nike USA, Inc. v. Oberg*,
   2022 WL 1597404 (E.D.N.Y. May 19, 2022) ........................................................ 4, 23

*Northwest Aluminum Co. v. Hydro Aluminum Deutschland GmbH*,
   2003 WL 23571744 (D. Or. Sept. 23, 2003) ............................................................. 10

*O'Keefe v. Inca Floats, Inc.*,
   1997 WL 703784 (N.D. Cal. Oct. 31, 1997) ...................................................... 4, 22, 23

*Perry v. Nat'l Assoc. of Home Builders of U.S.*,
   2020 WL 5759766 (D. Md. Sept. 28, 2020) .............................................................. 11

SHOPIFY DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

6390933

*Phillips v. Persons Services Corp.*,
  2021 WL 5277481 (W.D. Tenn. Mar. 31, 2021) ........................................................... 13

*Picot v. Weston*,
  780 F.3d 1206 (9th Cir. 2015) .......................................................................................... 9, 11

*Prevail Legal, Inc. v. Gordon*,
  2021 WL 1947578 (N.D. Cal. May 14, 2021) ................................................................. 9

*Regents of Univ. of Cal. v. Super. Ct.*,
  4 Cal. 5th 607 (2018) ........................................................................................................... 20

*Rider v. Uphold HQ Inc.*,
  657 F. Supp. 3d 491 (S.D.N.Y. 2023) ............................................................................ 25

*Robeson v. Twin Rivers Unified Sch. Dist.*,
  2014 WL 1392922 (E.D. Cal. Apr. 9, 2014) ................................................................. 18

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) ........................................................................................... 7, 11

*Singh v. City of N.Y.*,
  40 N.Y.3d 138 (2023) ....................................................................................................... 23, 24

*Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*,
  549 U.S. 422 (2007) ........................................................................................................... 16

*TAAG Linhas Aereas de Angola v. Transamerica Airlines, Inc.*,
  915 F.2d 1351 (9th Cir. 1990) ........................................................................................... 18

*Tristan v. Bank of Am.*,
  2023 WL 4417271 (C.D. Cal. June 28, 2023) ............................................................... 22

*United States v. Houser*,
  804 F.2d 565 (9th Cir. 1986) ........................................................................................... 2, 8

*Vu v. Cal. Com. Club, Inc.*,
  58 Cal. App. 4th 229 (1997) ............................................................................................. 22

*Walden v. Fiore*,
  571 U.S. 277 (2014) ........................................................................................................... 9, 11

*Weisbein v. Allergan, Inc.*,
  2022 WL 1288222 (C.D. Cal. Mar. 28, 2022) ............................................................ 10, 11

*Yeager v. Airbus Grp. SE*,
  2021 WL 750836 (C.D. Cal. Jan. 26, 2021) ................................................................. 10

SHOPIFY DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

6390933

*Yei A. Sun v. Adv. China Healthcare, Inc.*,
    901 F.3d 1081 (9th Cir. 2018) ................................................................................. 19

*Yuille v. Uphold HQ Inc.*,
    2023 WL 5206888 (S.D.N.Y. Aug. 11, 2023) ........................................................... 24

<u>Statutes</u>

New York General Business Law Section 349 .................................................... 19, 23, 25

<u>Rules</u>

Fed. R. Civ. P. 12(b)(2) ............................................................................................ 1, 4

Fed. R. Civ. P. 12(b)(6) ...................................................................................... 1, 4, 20

SHOPIFY DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

6390933

### NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on March 14, 2024, at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 5 (17th Floor) of the above-entitled court, located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendants Shopify Inc. and Shopify (USA) Inc. ("Shopify USA" and together, the "Shopify Defendants") will, and hereby do, move the Court to dismiss Plaintiffs' claims in the Second Amended Complaint against the Shopify Defendants.

The Shopify Defendants seek dismissal of Plaintiffs' claims for: (1) lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2); (2) forum non conveniens; and (3) failure to state a claim under Rule 12(b)(6).

### MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

Defendants Shopify Inc. and Shopify USA are not California companies—they are neither incorporated in nor headquartered in California. Yet Plaintiffs argued that California has personal jurisdiction over the Shopify Defendants because they allegedly conduct business in California; Shopify USA used to have an office in California; they work with California merchants; and Plaintiffs allegedly suffered harm in California. As this Court already held, such allegations do not give rise to general jurisdiction or specific jurisdiction over the Shopify Defendants in California. The Ninth Circuit affirmed the Court's holding, finding that there was no jurisdiction over the Shopify Defendants on the record the Plaintiffs presented. The Ninth Circuit remanded to allow jurisdictional discovery on a single, narrow issue: the roles and responsibilities of California-based Shopify USA employee Vivek Narayanadas.

Six months of jurisdictional discovery has confirmed this Court's holding that California does not have jurisdiction over the Shopify Defendants. Despite being the only issue that the Ninth Circuit remanded, Plaintiffs' Second Amended Complaint ("SAC") studiously avoids mentioning the relevant jurisdictional facts relating to Mr. Narayanadas. In 2017, Shopify USA hired Mr. Narayanadas as a remote employee based in Virginia who regularly traveled to Ottawa, Canada, for meetings. A year later, Mr. Narayanadas chose to move to California because his wife attained a professorship at a San Diego law school. The Shopify Defendants never asked Mr. Narayanadas to

move to California. In fact, Mr. Narayanadas was repeatedly told that it would be more convenient if he moved to Ottawa. But given his family situation, Mr. Narayanadas was permitted to work from California as a personal accommodation. Even after his move, Mr. Narayanadas' testimony is clear that his role and responsibilities remained global and had no specific connection to California. Mr. Narayanadas' global responsibilities and personal decision to move to California defeat the exercise of personal jurisdiction over the Shopify Defendants in California.

Faced with this dispositive reality, Plaintiffs *omit entirely* the above facts relevant to jurisdiction. They instead mischaracterize Mr. Narayanadas' testimony throughout the SAC. For example, Plaintiffs allege that Mr. Narayanadas did nothing to monitor TaskUs or Ledger, including in connection with the criminal theft of information in 2020 ("2020 Data Theft"). But Mr. Narayanadas testified that he *was not responsible* for the TaskUs or Ledger relationships; others were. Likewise, Plaintiffs allege that Mr. Narayanadas was the one who made privacy-related decisions. Yet Mr. Narayanadas testified that he was *not* the sole or ultimate decisionmaker on all privacy issues. Regardless, none of these allegations changes the fact that California does not have personal jurisdiction over the Shopify Defendants simply because Mr. Narayanadas unilaterally chose to work remotely from California.

The Shopify Defendants respectfully request that the Court, once again, dismiss Plaintiffs' claims with prejudice for three reasons.

*First*, this Court lacks personal jurisdiction over the Shopify Defendants. Plaintiffs are no longer contending that there is general jurisdiction over Shopify Inc. and Shopify USA in California. As for specific jurisdiction, under the law of the case doctrine, this Court must focus on the *new facts* alleged in the SAC that were not alleged in the First Amended Complaint ("FAC") because the Ninth Circuit already held that the prior allegations were insufficient. *United States v. Houser*, 804 F.2d 565, 567 (9th Cir. 1986) ("trial court may not reconsider a question decided by an appellate court" (cleaned up)). Those new facts all relate to Mr. Narayanadas' residence in California.

Plaintiffs assert that because Mr. Narayanadas worked remotely from California, every action he took, or failed to take, relating to the 2020 Data Theft are "contacts" with California that can be attributed to the Shopify Defendants. The law says otherwise. "For specific jurisdiction to exist over

SHOPIFY DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

6390933

1    Shopify, [Plaintiffs'] claim must be one which arises out of or relates to the defendant's forum-related

2    activities." *Briskin v. Shopify, Inc.*, 87 F. 4th 404, 413 (9th Cir. 2023) (cleaned up). Plaintiffs cannot

3    show that, but for Mr. Narayanadas' residence in California, the 2020 Data Theft or their injury

4    would not have occurred. Nor can Plaintiffs establish that by accommodating Mr. Narayanadas'

5    desire to work from California, the Shopify Defendants purposefully directed suit-related conduct at

6    California, or purposefully availed themselves of the benefits of California. Indeed, where, as here,

7    a company accommodates remote work in a forum, courts uniformly refuse to find specific

8    jurisdiction over the company solely due to the remote employee's choice to work from a particular

9    location. *See, e.g.*, *Gonzalez v. US Human Rights Network*, 512 F. Supp. 3d 944, 956-57 (D. Ariz.

10   2011) (no specific jurisdiction due to plaintiff's remote work in Arizona).

11       *Second*, the forum selection clauses in Plaintiffs' contracts with Ledger mandate that

12   Plaintiffs' claims against the Shopify Defendants be dismissed in favor of a French forum. The Ninth

13   Circuit already held that the forum selection clauses are enforceable and encompass this lawsuit.

14   *Baton v. Ledger SAS*, 2022 WL 17352192, at *2 (9th Cir. Dec. 1, 2022) (enforcing forum selection

15   clause in Ledger's contracts against Plaintiffs). Plaintiffs now plead in their SAC that the Shopify

16   Defendants owe them a duty because "[a]s Ledger's e-commerce vendor[,]" "Shopify was in the

17   *same unique and superior position*" as Ledger. (SAC ¶ 236 (emphasis added).) Plaintiffs further

18   allege that their claims "arise out of their purchase of Ledger wallets, which requires their agreement"

19   to the contracts with the forum selection clauses. (*Id.* ¶ 35.) Under controlling Ninth Circuit authority,

20   the Shopify Defendants can enforce the forum selection clause to dismiss this case in favor of the

21   agreed-upon forum. *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n.5 (9th. Cir. 1988)

22   (holding that forum selection causes apply to signatories and nonsignatories so long as the claims are

23   "closely related" to the contractual relationship).

24       *Third*, Plaintiffs fail to plead sufficient facts to maintain their claims. Plaintiffs' negligence

25   claims fail because they do not plead a "special relationship" between themselves and the Shopify

26   Defendants. *See Matyas v. Summerkids, Inc.*, 2023 WL 7108818, at *5 (C.D. Cal. Apr. 24, 2023)

27   (requiring that to plead duty for harm caused by a third party, the plaintiff must first identify a "special

28   relationship" with the defendant). Plaintiffs are customers of Defendant *Ledger SAS*, not the Shopify

1    Defendants, and thus do not plead any direct relationship with the Shopify Defendants. Nor can

2    Plaintiffs establish proximate cause, as the criminal actions of the third parties who surreptitiously

3    stole information constitute intervening events that break the chain of causation. *See O'Keefe v. Inca*

4    *Floats, Inc.*, 1997 WL 703784, at *4 (N.D. Cal. Oct. 31, 1997) ("criminal assault" was intervening

5    event). Plaintiffs' New York General Business Law claim also fails because Plaintiffs do not identify,

6    as required, any "consumer-oriented conduct" by the Shopify Defendants. *Nike USA, Inc. v. Oberg*,

7    2022 WL 1597404, at *4 (E.D.N.Y. May 19, 2022). Indeed, the Ninth Circuit has already held that

8    "Shopify [] provides web-based payment processing services to online merchants," not consumers.

9    *Briskin*, 87 F.4th at 415.

10   **II.    ISSUES TO BE DECIDED**

11       Whether Plaintiffs' claims against the Shopify Defendants in the SAC should be dismissed

12   with prejudice: (1) for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2); (2) for forum non

13   conveniens pursuant due to an enforceable forum selection clause; and/or (3) for failure to state a

14   claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).

15   **III.    BACKGROUND**

16       **A.    The Shopify Defendants and Their Business**

17       Shopify Inc. provides software and infrastructure for businesses that allows them to design,

18   set up, and manage their online stores. (Declaration of Erin McIntomny (ECF 56-1, "McIntomny

19   Decl.") ¶ 2.) Merchants use Shopify Inc.'s software and services to design, establish, and manage

20   stores across multiple sales channels, including the web, mobile applications, social media, and the

21   merchant's physical locations. (*Id*.) In turn, customers make purchases from merchants. (*Id*.) One

22   such merchant is Defendant Ledger. (SAC ¶ 9.)

23       Shopify USA provides services and support to various aspects of Shopify Inc.'s business.

24   (Declaration of Sarah Harris-John (ECF 55-1) ¶ 6.) Unlike Shopify Inc., Shopify USA does not enter

25   into contracts or business relationships for services with Ledger or other merchants. (*Id.* ¶ 7.) There

26   is no allegation that either Shopify Inc. or Shopify USA had a direct relationship with consumers like

27   Plaintiffs. (*See generally* SAC.)

28       In 2016, a separate entity—non-party Shopify International Limited ("Shopify

- 4 -

SHOPIFY DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

6390933

International")—entered into a contract for TaskUs to provide various services to Shopify International. (McIntomny Decl. ¶ 11.) Among other things, TaskUs agreed to provide customer support services to merchants who use Shopify Inc.'s e-commerce services. (*Id*.)

**B.    Criminals Steal Ledger Customer Information from TaskUs and Shopify, Inc.**

In 2020, conspiring TaskUs support workers in the Philippines surreptitiously used their work access to steal customer information from TaskUs and Shopify Inc., including information relating to Ledger's customers. (McIntomny Decl. ¶¶ 10-12.) Neither the Shopify Defendants nor their employees were involved in any way in the theft of this customer information. As soon as Shopify Inc. became aware of the data theft, it promptly notified its merchants. Shopify Inc. also immediately began investigating the data theft, including the scope and impact on affected persons.

Shopify Inc. was shocked to learn about the theft and the criminal scheme leading to it. Since it learned of the theft, Shopify Inc. has conducted its own investigation and worked with affected merchants, including Ledger, to provide them with information that they could use to inform any of their affected customers. And Shopify Inc. has continued to work tirelessly to protect merchant information and to ensure the security and integrity of its platform.

**C.    Jurisdictional Discovery Revealed that Mr. Narayanadas Worked Remotely from California Solely for Personal Reasons**

On November 9, 2021, this Court dismissed the Shopify Defendants for lack of personal jurisdiction, finding that there was no general or specific jurisdiction in California. *Baton*, 2021 WL 5226315, at *3-7 (N.D. Cal. Nov. 9, 2021). On December 1, 2022, the Ninth Circuit affirmed that finding based on the record Plaintiffs presented. *Baton*, 2022 WL 17352192, at *2 (holding that the district court "correctly ruled" on the "present record"). The Ninth Circuit remanded to allow Plaintiffs jurisdictional discovery on one issue: the "role and responsibilities" of a remote employee, Vivek Narayanadas, who worked from California and held the title of "Data Protection Officer." *Id*.

Plaintiffs served their first discovery requests in April 2023, deposed Mr. Narayanadas in October 2023, and filed the SAC in November 2023. (Declaration of Sourabh Mishra ("Mishra Decl.") ¶ 2.) As detailed below, jurisdictional discovery revealed that Mr. Narayanadas: lived in California for purely personal reasons; did not make all decisions on privacy-related matters or the

6390933

1    2020 Data Theft even while he resided in California; and held the Data Protection Officer ("DPO")

2    title to comply with *European Union* law, not California law.

3        In 2017, Shopify USA hired Mr. Narayanadas as a remote employee based in Virginia, where

4    he resided at the time. (Mishra Ex. 1 at 170:6-11.) Although Mr. Narayanadas' position was

5    originally supposed to be based in Ottawa, Mr. Narayanadas was provided an accommodation to

6    work remotely due to his wife's employment at Georgetown in Washington, D.C. (*Id.* at 170:6-

7    172:12.) In June 2018, Mr. Narayanadas needed to move to California because his wife received a

8    tenure track professorship at a law school in San Diego. (*Id.* at 173:22-174:7.) Though it would be

9    more expensive to fly to Ottawa from California, Mr. Narayanadas was again provided an

10   accommodation due to this personal need. (*Id.* at 174:23-176:8.)

11       As Mr. Narayanadas testified at his deposition, despite moving to California, his roles and

12   responsibilities remained global and had no specific connection to California. (*Id.* at 176:24-177:4,

13   178:2-5.) Answering the specific inquiry raised by the Ninth Circuit, Mr. Narayanadas confirmed

14   that his role as the DPO had nothing to do with California. Mr. Narayanadas' served as DPO for

15   purposes of the European Union's General Data Protection Regulation (the "GDPR"), which, as its

16   name suggests, focuses on operations in the European Union. (*Id.* at 176:15-23.) And

17   Mr. Narayanadas testified that he was one of several employees handling privacy issues because

18   privacy involved both legal issues (which he worked on with others in the legal department) and

19   other privacy-related matters (which "lots of people" worked on). (*Id.* at 173:6-13.)

20       With respect to the 2020 Data Theft, Mr. Narayanadas testified that he was not the ultimate

21   decisionmaker. (*Id.* at 181:11-25.) In addition, Mr. Narayanadas was not the person who managed

22   the relationship with TaskUs; not the person who negotiated the contract with TaskUs; not the person

23   who developed policies or controls relating to TaskUs; and not the person who implemented any data

24   protection policies specific to TaskUs. (*Id.* at 178:6-179:5.) And although Mr. Narayanadas was one

25   of 25 to 40 people who were involved in responding to the 2020 Data Theft, none of those other

26   people were located in California. (*Id.* at 181:7-14.) Most were based in Ottawa. (*Id.* at 179:6-181:2.)

27

28

SHOPIFY DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

6390933

## IV.    ARGUMENT

### A.    This Court Does Not Have Personal Jurisdiction Over the Shopify Defendants

"[T]he plaintiff bears the burden of establishing that jurisdiction is proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). "There are two forms of personal jurisdiction that a forum state may exercise over a nonresident defendant—general jurisdiction and specific jurisdiction." *Id.* at 1016. Plaintiffs are no longer contending that there is general jurisdiction over the Shopify Defendants. (Mishra Ex. 2 at 2 (Plaintiffs' counsel confirming that they are not arguing that there is general jurisdiction over the Shopify Defendants).)

Plaintiffs cannot meet their burden to show a prima facie case of specific jurisdiction over the Shopify Defendants in California. In assessing specific jurisdiction, "courts must determine whether a defendant has purposefully directed its activities towards the forum state, purposefully availed itself of the privilege of conducting activities in the forum state, or some combination of the two." *Briskin*, 87 F. 4th at 412. "[P]urposeful availment generally provides a more useful frame of analysis for claims sounding in contract, while purposeful direction is often the better approach for analyzing claims in tort." *Chattopadhyay v. Evolve Vacation Rental Network, Inc.*, 2023 WL 6199181, at *6 (N.D. Cal. Sept. 21, 2023). Even if the plaintiff can show purposeful direction or purposeful availment, the defendant can defeat jurisdiction by showing that the exercise of jurisdiction does not "comport with fair play and substantial justice," i.e., it is not "reasonable." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801-02 (9th Cir. 2004).

Here, the Ninth Circuit has already affirmed this Court's holding that the specific jurisdiction allegations and arguments presented in Plaintiffs' FAC and subsequent briefing are insufficient to plead specific jurisdiction against the Shopify Defendants. *Baton*, 2021 WL 5226315, at *5-7 (holding that there is no specific jurisdiction over Shopify Inc. or Shopify USA in California), *aff'd in part*, 2022 WL 17352192, at *2 ("the district court correctly ruled that the present record does not support personal jurisdiction").

Under the law of the case doctrine, this Court must thus focus on *new facts* alleged in the SAC, not on the allegations that Plaintiffs recycled from the FAC and that both this Court and the

Ninth Circuit already rejected.[1] "A trial court may *not* [] reconsider a question decided by an appellate court." *Houser*, 804 F.2d at 567, *abrogated on other grounds by Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816–17 & n.5 (1988)). This "law of the case [doctrine] applies to issues decided explicitly or by necessary implication in the [appellate court's] previous disposition." *Hanna Boys Ctr. v. Miller*, 853 F.2d 682, 686 (9th Cir. 1988) (cleaned up). Since the Ninth Circuit affirmed that the "district court correctly ruled that the present record does not support personal jurisdiction," the Ninth Circuit necessarily decided that the facts pleaded in the FAC are insufficient to support specific jurisdiction. *See id.* at 685 ("Although the motions panel's order did not explicitly state that it granted the motion because the district court lacked subject matter jurisdiction, it necessarily did so by implication."); *see also Columbia Sussex Mgmt., LLC v. City of Santa Monica*, 2021 WL 3737698, at *2 (C.D. Cal. Aug. 24, 2021) ("This Court is bound by precedent of the Ninth Circuit, and particularly so by rulings that constitute the law of the case.").

The SAC's only new alleged contact between the Shopify Defendants and California is the fact that Mr. Narayanadas worked as a remote employee from his home in San Diego, California. (*See supra* III.C.) This allegation is insufficient to find purposeful direction or purposeful availment. And even if it was sufficient to find either (which it is not), it would not be reasonable to exercise jurisdiction simply because Mr. Narayanadas' request to work from California for personal reasons was accommodated.

            1.    <u>The Shopify Defendants Did Not Expressly Aim Their Activities at California</u>

Tort claims "are most naturally analyzed under the purposeful direction framework." *Briskin*, 87 F.4th at 412. The Ninth Circuit "evaluate[s] purposeful direction under the *Calder* effects test[.]" *Id*. Pursuant to this test, the plaintiff must show that the defendant "committed an intentional act" relating to plaintiff's claim that is "expressly aimed at the forum state." *Id.* The decision to allow Mr. Narayanadas to work remotely from his home in San Diego is insufficient to plead purposeful

---

[1] For example, Plaintiffs repeat their already rejected theories that: (1) the Shopify Defendants solicit business in California; (2) the Shopify Defendants do business with Ledger and TaskUs, who themselves do business in California; and (3) a California man unconnected to any Defendant committed criminal acts in California. *Baton*, 2021 WL 5226315, at *6-7 (rejecting each of Plaintiffs' theories).

SHOPIFY DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT
6390933

direction for at least three independently fatal reasons.

*First*, Plaintiffs cannot show that the 2020 Data Theft arises from or relates to Mr. Narayanadas being allowed to work remotely from California. "For specific jurisdiction to exist over Shopify, [Plaintiffs'] claim must be one which *arises out of or relates to* the defendant's forum-related activities." *Id.* at 413 (cleaned up) (emphasis in original). "The 'arising out of' portion" requires "'but for' causation." *Id.* (cleaned up). The "related to" test requires a "close connection between contacts and injury." *Id.* at 414 (cleaned up).

Plaintiffs' claims do not arise out of or relate to Mr. Narayanadas' residence in California. As Mr. Narayanadas testified, his privacy role was "meant to be global" and was not specific to California or any other geographic region. (Mishra Ex. 1 at 172:19-23, 178:2-5.) Indeed, Plaintiffs do not identify a *single act* Mr. Narayanadas took or allegedly failed to take that was *specifically because of* his residence in California. Therefore, regardless of whether Mr. Narayanadas lived in California, Virginia, or Canada, the 2020 Data Theft would have occurred, Mr. Narayanadas would have acted as he did, and Plaintiffs would have suffered their alleged injury. *Briskin*, 87 F. 4th at 414–15 (contact did not relate to claims where plaintiff "would have suffered the same injury regardless of whether he purchased items from a California merchant or was physically present in California when he did so"); *Picot v. Weston*, 780 F.3d 1206, 1215 (9th Cir. 2015) (no jurisdiction over a defendant in California where plaintiff's alleged injury "would follow him wherever he might choose to live or travel").

*Second*, Plaintiffs cannot show that Mr. Narayanadas' move to California was a contact that the Shopify Defendants "expressly aimed at the forum state." "The express aiming inquiry requires 'something more' than a foreign act with foreseeable effects in the forum state." *Prevail Legal, Inc. v. Gordon*, 2021 WL 1947578, at *4 (N.D. Cal. May 14, 2021); *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069-70 (9th Cir. 2017) ("In *Walden*, the Supreme Court rejected our conclusion that the defendants' knowledge of the plaintiffs' strong forum connections, plus the foreseeable harm the plaintiffs suffered in the forum, comprised sufficient minimum contacts." (cleaned up)). That "something more" is that the plaintiff must identify "wrongful conduct individually targeting a known forum resident." *Athena Cosmetics, Inc. v. U.S. Warehouse*, 2020 WL 1969260, at *7 (C.D.

6390933

1   Cal. Mar. 5, 2020).

2      Here, far from targeting California, Mr. Narayanadas' testimony makes clear that the Shopify

3   Defendants did *not* want him to move to California. Mr. Narayanadas testified that he was told that

4   it would be much *more* expensive for him to work from California because his trips to Canada would

5   be more expensive. (Mishra Ex. 1 at 175:18-23.) In fact, he was told repeatedly that it would be

6   preferable if he moved to Canada. (*Id.* at 175:24-176:4.) Despite these preferences, Mr. Narayanadas

7   was allowed to work remotely from San Diego "as a personal accommodation" because of his wife's

8   professorship in San Diego. (*Id.* at 176:5-8, 174:3-7.) In other words, the fact that Mr. Narayanadas

9   worked from California was *his personal decision*, not express aiming by the Shopify Defendants.

10      Courts do not find purposeful direction where, as here, the defendant's alleged contact with

11   the forum was not an action the defendant *itself* took. *See, e.g.*, *Yeager v. Airbus Grp. SE*, 2021 WL

12   750836, at *4 (C.D. Cal. Jan. 26, 2021) (no purposeful direction where "Plaintiffs have failed to

13   plead facts or adduce evidence to show that Airbus SE took any steps to use or disseminate the sales

14   video"); *Northwest Aluminum Co. v. Hydro Aluminum Deutschland GmbH*, 2003 WL 23571744, at

15   *5 (D. Or. Sept. 23, 2003) (no purposeful direction where plaintiff alleged "specific personal

16   jurisdiction over a foreign corporation based upon harm caused only through an intermediary").

17      *Third*, even if Mr. Narayanadas' residence were relevant, Plaintiffs do not identify any

18   specific act he took that was specifically directed at California. Even where employees reside in the

19   forum and are involved in the alleged conduct at issue, the plaintiff must still show that the actions

20   taken by those employees were "expressly aimed" at the forum. *See Weisbein v. Allergan, Inc.*, 2022

21   WL 1288222, at *5 (C.D. Cal. Mar. 28, 2022) ("That certain of Allergan USA's California employees

22   had some involvement in authorizing, outsourcing, or overseeing the text program does not alter this

23   conclusion, especially where plaintiff does not contest that the 'intentional act' was 'expressly aimed'

24   at a state other than California.").

25      Here, Plaintiffs do not allege any specific facts showing that Mr. Narayanadas made any

26   decision (or failed to make a decision) specific to California. Indeed, in their allegations relating to

27   Mr. Narayanadas, Defendants do not once mention California outside of noting that it was his place

28   of residence. (SAC ¶¶ 39-55.) This is consistent with Mr. Narayanadas' testimony in which he stated

- 10 -

SHOPIFY DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

6390933

1    that his responsibilities were global, not California-specific. (Mishra Ex. 1 at 172:19-23, 178:2-5.)

2         In summary, the fact that Mr. Narayanadas worked from home in California does not establish

3    that the Shopify Defendants purposefully directed their activities at California. *See Weisbein*, 2022

4    WL 1288222, at *5 (granting motion to dismiss for lack of personal jurisdiction for failure to show

5    purposeful direction). Instead, Plaintiffs' failure to show that Mr. Narayanadas' residence or remote

6    work were intentional acts expressly aimed at California defeats the exercise of jurisdiction over the

7    Shopify Defendants in California. *See AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1212 (9th

8    Cir. 2020) (no specific jurisdiction where plaintiff did not meet its burden to show that defendant

9    "purposefully directed his activities" at the forum).

10              2.    The Shopify Defendants Did Not Purposefully Avail Themselves of

11                   California

12        Nor can Plaintiffs use Mr. Narayanadas' residence in California to show that the Shopify

13   Defendants purposefully availed themselves of the privilege of conducting business in California.

14        To establish purposeful availment, Plaintiffs must show that each Shopify Defendant

15   "performed some type of affirmative conduct which allows or promotes the transaction of business

16   within the forum state." *Picot,* 780 F.3d at 1212; *see also Schwarzennegger*, 374 F.3d at 802

17   (purposeful availment consists of actions that invoke the "benefits and protections" of the laws of the

18   forum). As with purposeful direction, the asserted "contacts" with the forum must "arise out of" or

19   relate to the defendant's own actions. *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

20        Mr. Narayanadas' personal residence is insufficient to find purposeful availment by the

21   Shopify Defendants for at least three reasons.

22        *First*, for the same reasons discussed above, Mr. Narayanadas' personal decision to work

23   remotely from California does not arise out of or relate to Plaintiffs' claims in this case. (*See supra*

24   § IV.A.1.)

25        *Second*, as courts around the country have repeatedly held, a company does not purposefully

26   avail itself of the laws of a forum by allowing an employee to work remotely. *See, e.g.*, *Gonzalez*,

27   512 F. Supp. 3d at 956-57 (no purposeful availment notwithstanding that remote employee's contract

28   envisioned that she would "perform her employment duties primarily while located in Arizona");

*Perry v. Nat'l Assoc. of Home Builders of U.S.*, 2020 WL 5759766, at *4-5 (D. Md. Sept. 28, 2020) ("In remote-work cases, however, a defendant's mere knowledge that an employee happens to reside in the forum state and conduct some work from home does not constitute purposeful availment."). This is especially true where, as here, the company provided the employee an accommodation to work remotely from the forum. *See, e.g.*, *Fields v. Sickle Cell Disease Assoc. of Am., Inc.*, 376 F. Supp. 3d 647, 653 (E.D.N.C. 2018) ("Plaintiff's choice to complete her work in North Carolina for her own reasons is a unilateral decision that cannot be fairly attributed to the defendant as an attempt to avail itself of the privileges of conducting business in North Carolina."), *aff'd*, 770 F. App'x 77 (4th Cir. 2019); *Carpenter v. So. Airways Express*, 2021 WL 5937749, at *6 (S.D. Ohio Dec. 16, 2021) ("Ms. Carpenter's unilateral decision to reside in Ohio while working in a virtual role does not support the conclusion that Defendants engaged in any overt actions connecting them to Ohio.").

To find purposeful availment due to a remote employee, the plaintiff must show, at minimum, "the presence" of "affirmative recruitment efforts within the forum state" or some other indication that the company hired the remote employee in the forum to enjoy the privileges of the forum. *Gonzalez*, 512 F. Supp. 3d at 957. Plaintiffs do not plead any facts showing that the Shopify Defendants enticed Mr. Narayandas to work in California because the facts are to the contrary: Mr. Narayanadas (1) was hired while he lived in Virginia; (2) moved to California later for personal reasons; (3) was allowed to work from California as an "accommodation"; and (4) did not have any California-specific responsibilities due to his residence in California. (*See supra* III.C.) There is no basis to find that the Shopify Defendants purposefully availed themselves of the privilege of conducting business in California. *See, e.g.*, *Callahan v. Wisdom*, 2020 WL 2061882, at *12 (D. Conn. Apr. 29, 2020) ("[T]he evidence fails to demonstrate that the Company purposefully availed itself of the privilege of conducting business in Connecticut such that it might reasonably anticipate being haled into court in Connecticut merely by engaging a consultant, who, purely incidental to his work for the Company, was located in Connecticut."); *Bertolini-Mier v. Upper Valley Neurology Neurosurgery, P.C.*, 2017 WL 4081901, at *5 (D. Vt. Sept. 13, 2017) ("APD's knowledge and facilitation of occasional remote work was an accommodation (made possible by improved technology), not a purposeful effort to have MRIs interpreted in Vermont.").

*Third*, even if Mr. Narayanadas' contacts could be attributed to the Shopify Defendants, Plaintiffs do not identify any actions taken by Mr. Narayanadas that demonstrate that the Shopify Defendants purposefully availed themselves of the benefits and protections of California law.

"It is well-settled that an employee's personal contacts with a forum are not automatically attributed to their employer." *Phillips v. Persons Services Corp.*, 2021 WL 5277481, at *4 (W.D. Tenn. Mar. 31, 2021) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)). Instead, "[t]he unilateral actions of an employee do not create minimum contacts in a forum for his employer unless there is evidence that the *employer* purposefully availed itself of the benefits and protections of the laws of the forum." *Id.* (emphasis added).

Here, Plaintiffs do not allege any act taken by Mr. Narayanadas in California that shows that the Shopify Defendants purposefully availed themselves of the benefits and protections of California law. They focus on Mr. Narayanadas' general responsibilities, without connecting his work to any benefits and protections of California, TaskUs, or Ledger. (SAC ¶¶ 39-55.) As jurisdictional discovery revealed, Mr. Narayanadas had *no specific responsibilities* relating to TaskUs or Ledger, and was not the decisionmaker with respect to issues relating to the 2020 Data Theft.[2] (Mishra Ex. 1 at 178:6-179:5, 181:11-25.) Therefore, Mr. Narayanadas' contacts, even if considered, do not establish purposeful availment by the Shopify Defendants.

### 3. Exercising Specific Jurisdiction Over the Shopify Defendants Would Be Unreasonable

Exercising personal jurisdiction over the Shopify Defendants due to their accommodation of Mr. Narayanadas' personal decision to work remotely from California would offend due process. The Ninth Circuit instructs district courts to examine seven factors in determining whether exercising specific personal jurisdiction over non-resident defendants is reasonable. *Amoco Egypt Oil Co. v. Leonis Nav. Co., Inc.*, 1 F.3d 848, 851–52 (9th Cir. 1993) (listing factors). The seven factors present

---

[2] In fact, Plaintiffs allege the Shopify Defendants are liable because Mr. Narayanadas *failed* to take actions to prevent the 2020 Data Theft. (SAC ¶ 206.) Even if true (it is not), the *failure* to take an act in a forum does not establish purposeful availment of the forum. *See Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017, 1024-25 (2021) (defendant "must take some act" that is "the defendant's own choice" and "by which it purposefully avails itself" of the forum) (cleaned up).

1    a compelling case that exercising jurisdiction over the Shopify Defendants would be unreasonable:

2        (i) <u>Extent of Purposeful Interjection.</u> Where the defendant's alleged contacts are "attenuated"

3    this first factor weighs against finding personal jurisdiction. *Core-Vent Corp. v. Nobel Indus. AB*, 11

4    F.3d 1482, 1488 (9th Cir. 1993). That is precisely the case here. Plaintiffs' jurisdictional theory is

5    that because Mr. Narayanadas was allowed to work from California, everything he allegedly did in

6    California that related in any way to the 2020 Data Theft constitutes a "contact" with California

7    attributable to the Shopify Defendants. Even if this were sufficient to plead purposeful direction or

8    purposeful availment (it is not), the extent of the Shopify Defendants' relevant contacts with

9    California are minimal, limited to allowing Mr. Narayandas to work from California. *Id.* ("Since the

10   doctors' contacts were attenuated, this factor weighs in their favor."). And Plaintiffs' focus on Mr.

11   Narayanadas' alleged failure to take acts in California that were not within his responsibilities makes

12   it even more unreasonable to find that the Shopify Defendants interjected themselves into California

13   to any meaningful extent. *See Insurance Co. of N. Am. v. Marina Salina Cruz*, 649 F.2d 1266, 1271

14   (9th Cir. 1981) ("The smaller the element of purposeful interjection, the less is jurisdiction to be

15   anticipated and the less reasonable is its exercise.").

16       (ii) <u>Burden on Defendant.</u> "The unique burdens placed upon one who must defend oneself in

17   a foreign legal system should have significant weight in assessing the reasonableness of stretching

18   the long arm of personal jurisdiction over national borders." *Amoco*, 1 F.3d at 852 (quoting *Asahi*

19   *Metal Indus. Co., Ltd. v. Super. Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 107 (1987)). None of the

20   Shopify Defendants are incorporated in or based out of California (SAC ¶¶ 28-29), and so witnesses

21   and evidence are likely to be located outside California. *Amoco*, 1 F.3d at 852 (factor favors defendant

22   where "[p]otential witnesses and evidence are not located in [the forum]"). This factor weighs in

23   favor of the Shopify Defendants.

24       (iii) <u>Conflict with the Sovereignty of Defendant's State.</u> "Where, as here, [Shopify Inc.] is

25   from a foreign nation rather than another state, the sovereignty barrier is high and undermines the

26   reasonableness of personal jurisdiction." *Id*. This factor thus also weighs in the Shopify Defendants'

27   favor.

28       (iv) <u>Forum State's Interest.</u> California has an interest in ensuring that out-of-state employers

- 14 -

6390933

1    accommodate the personal developments in employees' lives that require them, at times, to work

2    remotely from California. If this Court finds personal jurisdiction over the Shopify Defendants

3    because Mr. Narayanadas was allowed to work remotely from California due to his wife's change in

4    employment, non-California employers will necessarily balk at accommodating remote work for

5    California residents for fear of being subject to personal jurisdiction. This could have cascading

6    effects for employees and businesses alike. Employees need to work remotely for many legitimate

7    reasons, including their spouse's employment, a sick child who needs medical care in another state,

8    or an elderly relative who needs assistance in their old age. If employers cannot accommodate those

9    employees, either the employee will have to forego moving (which could have devastating effects

10   on their personal life) or resign (which would have negative effects for the employee until they find

11   a new job and result in the employer losing a valued employee). It is unreasonable and contrary to

12   "fair play and substantial justice" to penalize the Shopify Defendants for accommodating an

13   employee. *Core-Vent*, 11 F.3d at 1490.

14       (v) <u>Most Efficient Resolution.</u> There is no basis to conclude that California is a better forum

15   to achieve an efficient resolution. Indeed, there is a pending action relating to the same issues in

16   Delaware (Mishra Decl. ¶ 3); and several of Plaintiffs' claims against Ledger have been dismissed

17   in favor of a French forum. *Baton*, 2022 WL 17352192, at *2. This factor is neutral.

18       (vi) <u>Convenient and Effective Relief for Plaintiff.</u> As mentioned above, several of Plaintiffs'

19   claims against Ledger have been dismissed in favor of a French forum. It would be most convenient

20   and effective for Plaintiffs to address all claims—including, as discussed further below, the same

21   claims dismissed against Ledger that are now asserted against the Shopify Defendants—in the same

22   forum.

23       (vii) <u>Existence of Alternative Forum.</u> "[Plaintiff] has the burden of proving the unavailability

24   of an alternative forum." *Amoco*, 1 F.3d at 853. Here, France is an adequate alternate forum where

25   Plaintiffs can assert their claims. This factor favors the Shopify Defendants. *Id.* (Egypt is an adequate

26   alternative forum).

27       For the foregoing reasons, exercising personal jurisdiction offends due process and is

28   unreasonable. *Core-Vent*, 11 F.3d at 1490 (no personal jurisdiction where "the exercise of jurisdiction

SHOPIFY DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

6390933

1  would not comport with fair play and substantial justice and would thus be unreasonable").

2  Accordingly, the Shopify Defendants should be dismissed for lack of personal jurisdiction.

3       **B.**     **This Case Must Be Dismissed Pursuant to a Forum Selection Clause Requiring**

4              **Disputes Be Brought in France**

5       Alternatively, this Court should dismiss Plaintiffs' claims against the Shopify Defendants

6  pursuant to the forum selection clause in Plaintiffs' contracts with Ledger. *See Sinochem Int'l Co.*

7  *Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 435-36 (2007) (courts can dismiss claims based

8  on forum non conveniens without reaching other jurisdictional issues, including personal

9  jurisdiction).

10       Dismissal is appropriate on forum non conveniens grounds when there is a forum selection

11  clause mandating that the claims be litigated in another forum. *See Atl. Marine Const. Co. v. U.S.*

12  *Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 60-62 (2013) ("[T]he appropriate way to enforce a

13  forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non*

14  *conveniens*."). In determining whether to dismiss claims against a nonparty to the contract with the

15  foreign forum selection clause, courts must find: (1) an enforceable forum selection clause that binds

16  the parties opposing the application of the clause; (2) that the forum selection clause applies to the

17  claims in the case; (3) that the non-signatory proponents can enforce the forum selection clause; and

18  (4) that there are no extraordinary circumstances to set aside the forum selection clause. *See, e.g.*,

19  *Manetti-Farrow*, 858 F.2d at 513–15 (affirming dismissal after finding that the parties agreed to a

20  forum selection clause that applied to the dispute); *id.* at 514 n.5 ("forum selection clause applies to

21  all defendants" even though only one defendant signed the contract).

22       Here, the Ninth Circuit already held that the first and second requirements apply to Plaintiffs'

23  contracts with Ledger. The Ninth Circuit found:

24  - "Plaintiffs' claims arise out of their purchase of Ledger wallets";

25  - "To buy a wallet, a purchaser must agree to the Sales Terms and Conditions, which

26      acknowledge that Ledger may collect personal data and which refer in turn to the Privacy

27      Policy for details regarding Ledger's use of those data";

28  - "[U]sers must agree to the Ledger Live Terms of Use when they begin to use the Ledger Live

software"; and

- "All three documents contain extremely broad forum selection clauses providing that covered disputes will be subject to the exclusive jurisdiction of the French courts."

*Baton*, 2022 WL 17352192, at *2. Based on these findings, the Ninth Circuit held that: (1) the "forum-selection clauses are enforceable" against Plaintiffs; and (2) the "broad scope" of the clauses "encompasses *this lawsuit*." *Id.* (emphasis added).[3] This Court is bound by these holdings under the law of the case doctrine. *See Bell v. Hawaiian Airlines, Inc.*, 147 F. App'x 643, 644-45 (9th Cir. 2005) (finding error in district court's order after remand because "a trial court may not reconsider a question decided by an appellate court" (cleaned up)).

The only remaining questions are thus whether the forum selection clauses in Plaintiffs' contracts with Ledger extend to the non-signatory Shopify Defendants and whether any extraordinary circumstances exist to set aside the clauses. Both considerations favor enforcing the forum selection clause to dismiss Plaintiffs' claims against the Shopify Defendants.

       1.    <u>Plaintiffs' Claims Against the Shopify Defendants Are Closely Related to the Ledger Contracts</u>

"In the Ninth Circuit, 'where the alleged conduct of the nonparties is closely related to the contractual relationship, a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clause.'" *McNally v. Kingdom Tr. Co.*, 2020 WL 7786539, at *2 (C.D. Cal. Nov. 13, 2020) (cleaned up). The Ninth Circuit thus affirms enforcement of forum selection clauses by and against nonsignatories to contracts so long as the claims against the non-signatories are "closely related to the contractual relationship." *Manetti-Farrow*, 858 F.2d 509, at 514 n.5 ("We agree with the district court that the alleged conduct of the non-parties is so closely related to the contractual relationship that the forum selection clause applies to all defendants."); *Holland Am. Line Inc. v. Wartsila N.A., Inc.*, 485 F.3d 450, 456-57 (9th Cir. 2007) ("The forum selection clauses apply equally to BVNA and BV Canada because any transactions between those

---

[3] In the SAC, Plaintiffs concede that their contracts with Ledger contain "a broad forum-selection clause which is enforceable" and "Plaintiffs' claims arise out of their purchase of Ledger wallets." (SAC ¶ 35.)

SHOPIFY DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

6390933

1  entities and Holland America took place as part of the larger contractual relationship between

2  Holland America and Bureau Veritas.").

3      Here, Plaintiffs' allegations leave no doubt that their claims against the Shopify Defendants

4  are "closely related" to the contractual relationship between Plaintiffs and Ledger. Plaintiffs claim

5  that their "*claims arise out of their purchase* of Ledger wallets, *which requires their agreement* to

6  the Sales Terms and Conditions, Privacy Policy, and Ledger Live Terms of Use." (SAC ¶ 35

7  (emphasis added). The Ledger Privacy Policy discloses to Ledger consumers that Ledger would share

8  their data with vendors like the Shopify Defendants.[4] (*Id.* ¶ 95 (quoting the Ledger Privacy Policy);

9  ECF 60, Ex. A (Ledger Privacy Policy) at 9 ("We may also transmit some of your data to third parties

10  such as payment services, infrastructure, logistics, and other services providers.").) Plaintiffs thus

11  conclude that "[a]s Ledger's e-commerce vendor entrusted with Ledger's data, Shopify was in the

12  same unique and superior position" as Ledger. (SAC ¶ 236.)

13      Where, as here, a plaintiff's claims are closely related to the contractual relationship, courts

14  enforce forum selection clauses by and against non-signatories. *See, e.g.*, *Holland Am. Line*, 485 F.3d

15  at 456 & n.2 (finding that a forum selection applied to the signatory defendant's foreign affiliates

16  because their alleged conduct was tied to the contract); *TAAG Linhas Aereas de Angola v.*

17  *Transamerica Airlines, Inc.*, 915 F.2d 1351, 1353 (9th Cir. 1990) ("It is not unreasonable or unjust

18  to enforce the clause even though some of them did not sign the agreement."); *In re Yahoo! Inc.*

19  *Customer Data Sec. Breach Litig.*, 2017 WL 3727318, at *51 (N.D. Cal. Aug. 30, 2017) (holding

20  that non-signatory defendant can enforce forum selection clause because "Plaintiffs' negligence

21  claim against Yahoo is closely related to the ATOS signed by foreign users and the Yahoo

22  subsidiaries providing Yahoo services in those countries"); *Robeson v. Twin Rivers Unified Sch.*

23  *Dist.*, 2014 WL 1392922, at *3 (E.D. Cal. Apr. 9, 2014) (finding that the individual defendants'

24  conduct was closely related to the plaintiff's employment pursuant to her contract with the school

25  district where she alleged that all defendants conspired together); *Dawson v. Cagle Cartoons, Inc.*,

26

27  ───────────────

[4] In describing the relationship between themselves and the Shopify Defendants, Plaintiffs allege that
the Shopify Defendants only have access to information *due to Plaintiffs'* decision to "purchase

28  directly from Ledger on its Shopping Website" and thereby "provide certain personal information"
to Ledger and the Shopify Defendants." (SAC ¶ 118.)

SHOPIFY DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

6390933

1   2013 WL 4829317, at *7 (E.D. Cal. Sept. 9, 2013) (finding that the defendant was closely related to

2   the contractual relationship where the plaintiff alleged that he was part of the joint venture and

3   common enterprise). The Shopify Defendants can therefore enforce the forum selection clauses in

4   Plaintiffs' contracts with Ledger.

5                    2.    Plaintiffs Cannot Meet Their Burden to Show Extraordinary Circumstances to

6                          Prevent Enforcement of the Forum Selection Clause

7            Once the district court finds a forum selection clause in the parties' contract, "the plaintiff

8   'must bear the burden of showing why the court should not transfer the case to the forum to which

9   the parties agreed.'" *Yei A. Sun v. Adv. China Healthcare, Inc.*, 901 F.3d 1081, 1087 (9th Cir. 2018)

10  (quoting *Atl. Marine*, 571 U.S. at 64). "In short, 'only under extraordinary circumstances unrelated

11  to the convenience of the parties' should a motion to enforce a forum-selection clause be denied."

12  *Id.* at 1088 (quoting *Atl. Marine*, 571 U.S. at 62). "The practical result is that a forum-selection clause

13  'should control except in unusual cases.'" *Id.* (quoting *Atl. Marine*, 571 U.S. at 64).

14           Under Ninth Circuit precedent, "a forum-selection clause [is] controlling unless the plaintiff

15  made a strong showing" on one of three factors: "(1) the clause is invalid due to 'fraud or

16  overreaching,' (2) 'enforcement would contravene a strong public policy of the forum in which suit

17  is brought, whether declared by statute or by judicial decision,' or (3) 'trial in the contractual forum

18  will be so gravely difficult and inconvenient that [the litigant] will for all practical purposes be

19  deprived of his day in court.'" *Id.* (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15

20  (1972)).

21           Here, Plaintiffs concede that the forum selection clauses are generally enforceable (SAC ¶ 35

22  ("Each agreement includes a broad forum-selection clause which is enforceable[.]")) but contend that

23  they do not apply to "Plaintiffs who are 'California resident plaintiffs bringing class action claims

24  under California consumer law.'" (*Id.* (internal citation omitted).)

25           As to the Shopify Defendants, however, Plaintiffs do not bring claims under California

26  consumer law. Instead, Plaintiffs allege the following four claims: (1) negligence; (2) negligence per

27  se; (3) declaratory judgment and injunctive relief; and (4) a violation of New York General Business

28  Law Section 349. (SAC ¶¶ 231-55, 302-06.) The Ninth Circuit already held that the forum selection

- 19 -
6390933

clauses apply to *all four of these claims* and affirmed dismissal of the claims against Ledger on that basis. *Baton*, 2022 WL 17352192, at *2 ("[W]e reverse the dismissal of Plaintiffs' California consumer law claims but otherwise affirm the dismissal of Plaintiffs' claims against Ledger."); FAC ¶¶ 168-192, 271-276 (asserting negligence, negligence per se, declaratory judgment and injunctive relief, and N.Y. Gen. Bus. Law claims against Ledger). Plaintiffs thus have not, and cannot, meet their burden to show extraordinary circumstances to set aside the forum selection clause.

Since the forum selection clauses in Plaintiffs' contracts with Ledger mandate that disputes be brought in France and Plaintiffs cannot meet their burden to show extraordinary circumstances to set the clauses aside, the Court should dismiss Plaintiffs' claims against the Shopify Defendants.

### C.    Plaintiffs Fail to State a Claim Upon Which Relief Can Be Granted

Even if Plaintiffs' claims survived the above jurisdictional and forum challenges, they must be dismissed under Rule 12(b)(6) for failure to state a plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (cleaned up)).

### 1.    Plaintiffs Fail to Plead an Actionable Legal Duty and Causation Required for Their Negligence, Negligence Per Se, and Equitable Relief Claims

Plaintiffs assert negligence, negligence per se, and declaratory judgment and injunctive relief claims against the Shopify Defendants. (SAC ¶¶ 231-46.) To support these claims, Plaintiffs allege in each that the Shopify Defendants: (1) owed Plaintiffs a duty; and (2) caused Plaintiffs harm due to their alleged breach of those duties. (*Id.* ¶¶ 232, 240 (asserting duty and proximate cause for negligence claim); *id.* ¶¶ 242, 246 (same for negligence per se claim); *id.* ¶¶ 249-250 (same for declaratory judgment and injunctive relief claims).)

Under well-established precedent, Plaintiffs have not pled sufficient facts to show an actionable duty or proximate cause to support these three claims.

#### i.    Plaintiffs Cannot Show the Special Relationship Required to Plead an Actionable Claim Under California Law

Under California law, "when the plaintiff's harm [] was caused by a third party, a defendant generally 'owes no duty to control the conduct of the third party, nor to warn those endangered by

such conduct.'" *Matyas*, 2023 WL 7108818, at *5 (quoting *Regents of Univ. of Cal. v. Super. Ct.*, 4 Cal. 5th 607, 619 (2018) (cleaned up)). To show an actionable duty, "[f]irst, it must be determined whether there is a 'special relationship' between the parties that would give rise to an affirmative duty." *Id.* To show a "special relationship," the plaintiff "need[s] to allege facts showing that [it] had a 'right to expect protection from' [the defendant] or that [the defendant] had the 'ability to control' [the third party's] conduct." *Jackson v. Airbnb, Inc.*, 654 F. Supp. 3d 990, 994-95 (C.D. Cal. 2023) (quoting *Brown v. USA Taekwondo*, 11 Cal. 5th 204, 216 (2021)). Examples of special relationships include "[r]elationships between parents and children, colleges and students, [and] employers and employees." *Brown*, 11 Cal. 5th at 216. "Where there is no special relationship," a further analysis "is unnecessary." *Matyas*, 2023 WL 7108818, at *6 (citing *Brown*, 11 Cal. 5th at 209).

Here, Plaintiffs allege that third parties, not the Shopify Defendants, stole their information and thereby caused them harm. (SAC ¶ 12 ("[A] federal grand jury indicted a California man for wire fraud related to the Data Breach because he paid an employee of a Shopify vendor (TaskUs) to provide him with Shopify's merchant data."); *id.* ¶ 13 ("[T]wo customer support agents working for the Shopify vendor, TaskUs, obtained merchant and customer data of Shopify's customers, including Ledger.").) Plaintiffs thus must show a special relationship between themselves and the Shopify Defendants to plead an actionable duty. *See Airbnb*, 654 F. Supp. 3d at 994-95 (holding that plaintiff must, but did not, show a special relationship where harm was caused by third party).

Plaintiffs fail to articulate any theory to establish a special relationship between themselves and the Shopify Defendants. Instead, Plaintiffs point to their relationship with *Ledger*, arguing that "Ledger strove to create 'the highest level of security for crypto assets,'" and thus "was in a unique and superior position to protect against the harm to the Class members as a result of the data breaches." (SAC ¶¶ 235-37 (alleging various alleged facts relating Ledger).) Plaintiffs then reason that because the Shopify Defendants allegedly served as "Ledger's e-commerce vendor," "Shopify was in the same unique and superior position to protect this harm." (*Id.* ¶ 236.) Plaintiffs also claim that the Shopify Defendants could have, but failed, to adequately monitor TaskUs. (*Id.* ¶ 206.)

An allegation that the Shopify Defendants had a relationship with *Ledger* or *TaskUs*, rather than directly with Plaintiffs or the criminal actors, is insufficient to plead the special relationship

6390933

required for Plaintiffs' claims. *Airbnb*, 654 F. Supp. 3d at 994-95 ("To the extent Plaintiffs argue there was a special relationship between Airbnb and the host of the subject property, that is irrelevant. The host is not the third party who caused the harm. (cleaned up).") Likewise, Plaintiffs' conclusory allegation that the Shopify Defendants were in a "superior position" is insufficient to plead a special relationship. *Matyas*, 2023 WL 7108818, at *6 ("Although the TAC adds an allegation that Boreham possessed 'superior control over the means of protection [of campers],' such conclusory allegations need not be deemed true in considering a motion to dismiss.").

Where, as here, a plaintiff fails to plead a special relationship, courts dismiss negligence and other claims requiring an actionable duty at the pleading stage. *See, e.g.*, *Id.* at *6-7 (dismissing negligence claim for lack of a special relationship); *Airbnb*, 654 F. Supp. 3d at 994-95 (same); *Tristan v. Bank of Am.*, 2023 WL 4417271, at *15 (C.D. Cal. June 28, 2023) (same).

>                    *ii.    Plaintiffs Cannot Plead Proximate Cause as a Matter of Law Due to Intervening Criminal Acts*

In California, "[c]ausation of damages . . . in tort cases[] requires that the damages be proximately caused by the defendant's breach, and that their causal occurrence be at least reasonably certain." *Vu v. Cal. Com. Club, Inc.*, 58 Cal. App. 4th 229, 233 (1997). Proximate cause "limits the defendant's liability to those foreseeable consequences that the defendant's negligence was a substantial factor in producing." *Mendoza v. City of Los Angeles,* 66 Cal. App. 4th 1333, 1342 (1998).

Defendants "who lack the legal or practical ability to control [] criminal actions of third parties" are not responsible for the effects of those criminal acts. *Martinez v. Pacific Bell*, 225 Cal. App. 3d 1557, 1569 (1990). This is because "[t]he illegal acts of third parties are unforeseeable as a matter of law." *Jesse v. Malcmacher*, 2016 WL 9450683, at *10 (C.D. Cal. Apr. 5, 2016). Therefore, where there are "obviously illegal" acts committed by a third party, courts find that those "actions must be deemed a[] superseding intervening cause for which only [the third party] is responsible." *O'Keefe.*, 1997 WL 703784, at *4.

Here, Plaintiffs' allegations make clear that the 2020 Data Theft occurred due to the surreptitious and illegal actions of third parties. They allege that "a California man"—not connected to the Shopify Defendants—"paid an employee of a Shopify vendor (TaskUs) to provide him with

6390933

1  Shopify's merchant data." (SAC ¶ 12.) That "California man" was then indicted "for wire fraud

2  related to the [2020 Data Theft]." (*Id.*) Absent the intervening acts of these criminal third parties, the

3  2020 Data Theft would not have occurred.

4      Courts dismiss claims where, as here, plaintiffs fail to plead proximate cause. *See, e.g.*,

5  *Modisette v. Apple, Inc.* 30 Cal. App. 5th 136, 146-47 (2018) (affirming demurrer because "the gap

6  between Apple's design of the iPhone and the Modisettes' injuries is too great for the tort system to

7  hold Apple responsible"); *O'Keefe*, 1997 WL 703784, at *4 ("criminal assault" was an "intervening

8  cause" warranting dismissing negligence claim); *Citizens Bank of Pa. v. Reimbursement Techs., Inc.*,

9  2014 WL 2738220, at *5 (E.D. Pa. June 17, 2014) (conduct was "causally separated from plaintiff's

10 actual harm by multiple intervening acts of independent third parties[,]" including "fraud").

11             2.    Plaintiffs Fail to Plead Deceptive Action Toward Consumers as Required to

12                   Maintain Their NYGBL Claim

13     Plaintiffs assert a claim against the Shopify Defendants under New York General Business

14 Law ("NYGBL") section 349. (SAC ¶¶ 302-305.) To assert claims under NYGBL section 349, "the

15 plaintiff must prove the defendant has engaged in (1) consumer-oriented conduct that is

16 (2) materially misleading and (3) that plaintiff suffered injury as a result of the defendant's conduct."

17 *Nike USA*, 2022 WL 1597404, at *4. Plaintiffs' claim should be dismissed for at least three reasons.

18     *First*, Plaintiffs fail to identify any consumer-oriented conduct by the Shopify Defendants.

19 "[S]ection 349 is directed at wrongs against the consuming public." *Singh v. City of N.Y.*, 40 N.Y.3d

20 138, 147-48 (2023) (cleaned up). "Thus, parties claiming the benefit of the section must, at the

21 threshold, charge conduct that is consumer oriented." *Id.* (cleaned up). "This element is satisfied only

22 when the allegedly deceptive conduct has a broad impact on consumers at large." *Id.* (cleaned up).

23     Here, Plaintiffs allege that "Shopify is an e-commerce" service whose customers are

24 "businesses." (SAC ¶¶ 116-17.) They additionally contend that these e-commerce "solutions are

25 essentially a software product to which companies subscribe to host digital stores." (*Id.*) In sum,

26 Plaintiffs assert that "Shopify's success is based on providing services to allow *companies* to easily

27 operate online stores." (*Id.* ¶ 117.) Thus, the Shopify Defendants did not engage in "consumer-

28 oriented conduct" because, as the Ninth Circuit already held, they do business with *merchants*, not

SHOPIFY DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

6390933

consumers like Plaintiffs. *Briskin*, 87 F.4th at 423 (Shopify Inc. and Shopify USA "did not interact with consumers except as a result of the third-party decisions of its merchants"); *see also Singh*, 40 N.Y.3d at 147-48 ("[T]he deceptive conduct alleged in this case was directed solely at persons interested in obtaining licenses for the operation of taxicabs, not taxi consumers.").

*Second*, Plaintiffs fail to identify reliance on any actionable misrepresentation by the Shopify Defendants. Plaintiffs quote from "Shopify's terms of service" to try to claim that the Shopify Defendants had an obligation to "'take all reasonable steps' to protect the disclosure of confidential information." (SAC ¶ 119.) But, rather than identify facts showing *how* the Shopify Defendants did not live up to that statement, Plaintiffs just conclusorily allege it. (*Id.* ¶ 304 ("[f]ailing to implement and maintain reasonable security and privacy measures").) Courts routinely dismiss NYGBL claims based on similar broad statements that a plaintiff conclusorily alleges were misrepresentations. *See, e.g.*, *Griffey v. Magellan Health Inc.*, 562 F. Supp. 3d 34, 56 (D. Ariz. 2021) (dismissing claim because "privacy policy does not amount to an unlimited guaranty protecting PII and PHI from data breaches"); *Yuille v. Uphold HQ Inc.*, 2023 WL 5206888, at *12 (S.D.N.Y. Aug. 11, 2023) ("the statements that Uphold made could not have communicated the impression that Uphold's platform was so secure that no hackers, no matter how talented, could penetrate Uphold's platform and that assets stored in Uphold's account were safe from all potential harms").

Additionally, Plaintiffs cannot rely on the statement in the Terms of Service to support their NYGBL claim because they do not plead that they relied on it. *Merchants*, not customers like Plaintiffs, agree to the Terms of Service to conduct business. (Mishra Ex. 3 at 4 ("You confirm that you are receiving any Services provided by Shopify for the purposes of carrying on a business activity and not for any personal, household or family purpose.").) That is likely why Plaintiffs do not even allege that they viewed any statement made by the Shopify Defendants before deciding to do business with Ledger. This is fatal to Plaintiffs' claim. *See In re GEICO Customer Data Breach Litig.*, 2023 WL 4778646, at *17 (E.D.N.Y. July 21, 2023) (dismissing claim because "Plaintiffs have not alleged that the statement about GEICO's security measures was made available to consumers in any form; nor have Plaintiffs alleged that they actually saw any such statement . . . .").

*Third*, Plaintiffs do not identify any affirmative *conduct* in support of their NYGBL claim.

SHOPIFY DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

6390933

1    Instead, Plaintiffs allege that the Shopify Defendants *failed* to take actions or omitted facts. (SAC

2    ¶¶ 304-05.) To establish a NYGBL violation based on an omission theory, a plaintiff must "plausibly

3    allege that the defendants had knowledge of the material information and failed to disclose or actively

4    conceal such information." *In re Sling Media Slingbox Advert. Litig.*, 202 F. Supp. 3d 352, 359

5    (S.D.N.Y. 2016) (cleaned up). But Plaintiffs here do not identify any specific security vulnerability

6    that the Shopify Defendants were aware of but failed to disclose or act upon. (SAC ¶¶ 304-05 (no

7    identification of any specific vulnerability).) Instead, Plaintiffs conclusorily allege that the Shopify

8    Defendants did not sufficiently disclose that they were not securing Plaintiffs' information. (*Id.*)

9    When confronted with similar conclusory pleadings, courts reject those allegations as

10   insufficient and dismiss the NYGBL claim. *See, e.g., In re GEICO*, 2023 WL 4778646, at *16 ("The

11   Complaint also alleges in conclusory fashion that GEICO engaged in deceptive acts by 'omitting,

12   suppressing, and concealing the inadequacy of its security protections.' Such conclusory pleading

13   and argument—without explanation about how such a vanilla-statement constitutes a deceptive act—

14   is insufficient to state a § 349 claim." (internal citations omitted)); *Rider v. Uphold HQ Inc.*, 657 F.

15   Supp. 3d 491, 499-500 (S.D.N.Y. 2023) ("Plaintiff asserts that Uphold violated GBL § 349 by

16   'misrepresenting, both by affirmative representation and by omission, the safety of its systems and

17   services,' by 'fail[ing] to give timely warnings and notices,' and by 'failing to implement reasonable

18   and appropriate security measures.' But, beyond these broad conclusory allegations, plaintiffs never

19   specify what misrepresentations defendants made.").

20   **V.    CONCLUSION**

21   Plaintiffs are attempting to impose personal jurisdiction on the Shopify Defendants in

22   California because Mr. Narayanadas was provided an accommodation to work remotely due to his

23   personal need to move to California because of his wife's employment. Not only does this

24   jurisdictional theory fail under well-established authority, but it also offends due process and would

25   create significant disincentives for companies to accommodate their employees' personal needs.

26   Alternatively, Plaintiffs' claims should be dismissed under forum non conveniens and for failure to

27   state a claim. The Shopify Defendants respectfully request that the Court dismiss Plaintiffs' claims

28   against them with prejudice.

1   Dated: December 22, 2023               **HUESTON HENNIGAN LLP**

2

3

4                                          By: _____

5                                            Moez M. Kaba

6                                          *Attorneys for Defendants Shopify Inc.*

7                                          *and Shopify (USA)*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SHOPIFY DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

6390933