PURVI G. PATEL (CA SBN 270702)
PPatel@mofo.com
MATTHEW J. WYATT (CA SBN 343074)
MWyatt@mofo.com
CHRISTOPHER ADLER (CA SBN 346588)
CAdler@mofo.com
EMMA BURGOON (CA SBN 348097)
EBurgoon@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, California  90017-3543
Telephone:    213.892.5200
Facsimile:    213.892.5454

Attorneys for Defendant LEDGER SAS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAEEM SEIRAFI, EDWARD BATON, ANTHONY COMILLA, BRETT DEENEY, and ABRAHAM VILINGER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LEDGER SAS, and TASKUS, INC.<br><br>Defendants. | Case No.   3:21-cv-02470-EMC<br><br>**DEFENDANT LEDGER SAS'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT**<br><br>Judge:       Hon. Edward M. Chen<br>Date:        December 19, 2024<br>Time:        1:30 p.m.<br>Courtroom: 5<br><br>Complaint filed: April 6, 2021<br>TAC filed: August 22, 2024<br>Trial date: None |

## NOTICE OF MOTION AND MOTION

### TO PLAINTIFF NAEEM SERAIFI AND HIS COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on December 19, 2024, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 5 of this Court, located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendant Ledger SAS will and hereby does move this Court for an order dismissing all of Plaintiff Naeem Seirafi's claims against Ledger, which are brought under California's Unfair Competition Law ("UCL") and Consumers Legal Remedies Act ("CLRA"), or, in the alternative, striking Seirafi's overbroad California Consumer Subclass. Ledger moves, pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1), 12(b)(6), 12(f), and 23(d)(1)(D), on the grounds that:

(a) Seirafi lacks Article III standing for injunctive relief;

(b) Seirafi fails to satisfy basic pleading standards and the heightened pleading standard for his UCL and CLRA claims, which sound in fraud;

(c) Seirafi fails to state a claim for relief under the UCL or CLRA; and

(d) Seirafi's California Consumer Subclass allegations are facially overbroad.

The motion is based on this Notice; the accompanying Memorandum of Points and Authorities; the pleadings, files, and records in this action; and such additional evidence and arguments as may be presented at the hearing of this motion.

Dated:      September 19, 2024        MORRISON & FOERSTER LLP


By:   _/s/ Purvi G. Patel_
         Purvi G. Patel

         **_Attorneys for Defendant Ledger SAS_**

**TABLE OF CONTENTS**

Page

I.  INTRODUCTION ............................................................................................................. 1

II. FACTUAL BACKGROUND ........................................................................................... 2

    A.  Ledger Was the Victim of Two Security Incidents................................................. 2

    B.  This Is Seirafi's Fifth Opportunity to Plead a Claim Against Ledger ................... 3

    C.  The Court Trimmed Seirafi's Already Narrow Claims in the SAC........................ 4

    D.  Seirafi's TAC Largely Repeats the SAC .............................................................. 5

III. ARGUMENT .................................................................................................................... 6

    A.  Seirafi Does Not Have Standing to Seek Injunctive Relief ................................... 6

    B.  Seirafi Fails to State a UCL or CLRA Claim........................................................ 8

        1.  Seirafi fails to state a claim based on alleged misrepresentations or omissions................................................................................................... 9

        2.  Seirafi fails to state a claim based on Ledger's alleged failure to prevent the TaskUs Incident.................................................................. 13

        3.  Seirafi's request for equitable relief must be dismissed because he does not allege he lacks an adequate remedy at law ................................ 15

    C.  In the Alternative, the Court Should Strike Seirafi's California Consumer Subclass................................................................................................................. 16

    D.  The Court Should Deny Seirafi Leave to Amend After Multiple Attempts to Plead a Viable Claim........................................................................................ 17

IV. CONCLUSION ............................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*,
   744 F.3d 595 (9th Cir. 2014)................................................................................................18

*Anderson v. Kimpton Hotel & Rest. Grp., LLC*,
   No. 19-CV-01860-MMC, 2019 WL 3753308 (N.D. Cal. Aug. 8, 2019) ................................13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................................................................8

*Baba v. Hewlett-Packard Co.*,
   No. C 09-05946 RS, 2010 WL 2486353 (N.D. Cal. June 16, 2010) ......................................13

*Baltazar v. Apple, Inc.*,
   No. CV-10-3231-JF, 2011 WL 588209 (N.D. Cal. Feb. 10, 2011) ........................................12

*Bates v. United Parcel Serv., Inc.*,
   511 F.3d 974 (9th Cir. 2007) (*en banc*) ..................................................................................6

*Baton v. Ledger SAS*,
   No. 21-17036, 2022 WL 17352192 (9th Cir. Dec. 1, 2022) ....................................................3

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).................................................................................................................8

*Carvalho v. Equifax Info. Servs., LLC*,
   629 F.3d 876 (9th Cir. 2010)..................................................................................................17

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
   598 F.3d 1115 (9th Cir. 2010)..................................................................................................6

*Chenault v. Cobb*,
   No. C 13-03828 MEJ, 2013 WL 6072025 (N.D. Cal. Nov. 18, 2013) ...................................15

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983)...................................................................................................................6

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013)...................................................................................................................6

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018)................................................................................................7, 8

*Davis v. Fed. Election Comm'n*,
   554 U.S. 724 (2008)...................................................................................................................6

*Drevaleva v. Alameda Health Sys.*,
No. 22-CV-01585-EMC, 2022 WL 2644076 (N.D. Cal. July 7, 2022).....................................18

*Ehret v. Uber Techs., Inc.*,
68 F. Supp. 3d 1121 (N.D. Cal. 2014) ...............................................................................12

*Emerson v. N. Tr. Corp.*,
No. 23-CV-00241-TLT, 2023 WL 11884593 (N.D. Cal. Nov. 15, 2023)..............................16

*Gest v. Bradbury*,
443 F.3d 1177 (9th Cir. 2006)...............................................................................................6

*Haskins v. Symantec Corp.*,
No. 13-cv-01834-JST, 2013 WL 6234610 (N.D. Cal. Dec. 2, 2013) ...............................10 n.2

*Hernandez v. DTI GMBH*,
No. 21-CV-04065-JST, 2024 WL 3939569 (N.D. Cal. Aug. 26, 2024)..................................16

*Hovsepian v. Apple, Inc.*,
No. 08-5788 JF (PVT), 2009 WL 5069144 (N.D. Cal. Dec. 17, 2009)..................................17

*In re MacBook Keyboard Litig.*,
No. 5:18-cv-02813-EJD, 2020 WL 6047253 (N.D. Cal. Oct. 13, 2020) .................................15

*In re NVIDIA Corp. Sec. Litig.*,
768 F.3d 1046 (9th Cir. 2014)...........................................................................................10 n.2

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
No. 16-MD-02752-LHK, 2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ...............................12

*Johnson v. Trumpet Behav. Health, LLC*,
No. 3:21-CV-03221-WHO, 2022 WL 74163 (N.D. Cal. Jan. 7, 2022) ..................................15

*Julian v. TTE Tech., Inc.*,
No. 20-CV-02857-EMC, 2021 WL 810228 (N.D. Cal. Mar. 3, 2021)....................................8

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009).............................................................................................8, 9

*Keo v. Coutts*,
No. 22-CV-05317-TLT, 2023 WL 9051271 (N.D. Cal. Dec. 28, 2023) ................................18

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ..............................................................................................................7

*McGlinchy v. Shell Chem. Co.*,
845 F.2d 802 (9th Cir. 1988)..................................................................................................8

*Nacarino v. Chobani, LLC*,
668 F. Supp. 3d 881, 897 (N.D. Cal. 2022) .........................................................................16

*Salameh v. Tarsadia Hotel*,
   726 F.3d 1124 (9th Cir. 2013) ..................................................................................................17

*Sanders v. Apple Inc.*,
   672 F. Supp. 2d 978 (N.D. Cal. 2009) .....................................................................................17

*Sandoval v. Ali*,
   34 F. Supp. 3d 1031 (N.D. Cal. 2014) .....................................................................................17

*Sateriale v. R.J. Reynolds Tobacco Co.*,
   697 F.3d 777 (9th Cir. 2012) ...................................................................................................12

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) ...............................................................................................4, 15

*Weizman v. Talkspace, Inc.*,
   705 F. Supp. 3d 984 (N.D. Cal. 2023) .....................................................................................16

## STATEMENT OF THE ISSUES TO BE DECIDED

This motion raises the following issues:

1. **Standing.** Whether Plaintiff Naeem Seirafi has standing to seek injunctive relief when an injunction will not redress his alleged injuries and he does not allege any future injury that is certainly impending.

2. **UCL and CLRA.** Whether Seirafi's UCL and CLRA claims should be dismissed because he cannot plausibly plead that he relied on a misrepresentation or that Ledger failed to implement reasonable security measures.

3. **Requests for Equitable Relief.** Whether Seirafi's request for equitable relief should be dismissed under *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), because he does not allege he lacks an adequate remedy at law.

4. **Rule 12(f) Motion to Strike.** Whether Seirafi's overbroad California Consumer Subclass should be stricken as "immaterial" and "impertinent" because it is unrelated to his theory of the case and by definition includes individuals who have not been injured.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Despite four opportunities to plead his claims, Plaintiff Naeem Seirafi still does not allege standing for injunctive relief or state a plausible claim under California's Unfair Competition Law or Consumers Legal Remedies Act.  The Court dismissed Seirafi's claim for injunctive relief in the Second Amended Complaint ("SAC") because Seirafi did not allege an imminent future harm. The Court also found that Ledger's statements in its privacy policy, about its hardware wallets, and about two data security events were not misrepresentations sufficient to state a UCL or CLRA claim.  And the Court found that Seirafi's proposed California Consumer Subclass was facially overbroad.  His new allegations in the Third Amended Complaint ("TAC")—a mix of conclusory, implausible, and at times incoherent statements—do not cure those defects.  Indeed, they only underscore that he ***cannot*** cure the defects through amendment.

Seirafi's new allegation that he "would purchase Ledger products again in the future" if Ledger's security lived up to its representations does not solve his injunctive relief standing issue. As the Court already found, the security of Ledger's products and services ***does*** live up to Ledger's representations.  Moreover, Seirafi's conclusory allegation is insufficient because it does not suggest another purchase in the ***near or foreseeable future***, especially because Ledger hardware wallets are durable goods whose physical security is not in doubt.

Seirafi's new allegations about supposed misrepresentations fare no better.  Seirafi cites three new statements—none of which he alleges he actually saw or actually relied on, and none of which he plausibly alleges are misleading.  One, an advertisement for the Ledger Nano X, concerns the security of Ledger's hardware wallet, which remains uncompromised.  The second, an earlier version of Ledger's privacy policy, contains the same admonitory language the Court already found adequately "disclosed that any information inputted on the Internet is not fully secure."  The final, a statement about Ledger's investigation into the theft of transaction data by rogue TaskUs employees, muddles the TaskUs incident and a separate cyberattack involving an API key on Ledger's website.  These three new allegations are not plausible for the same reasons the alleged misrepresentations in the SAC were not plausible.

Seirafi also alleges that Ledger failed to implement and maintain reasonable security measures to protect his information from the TaskUs security incident. But allegations about Ledger's supposed failures are entirely conclusory, and regardless, his other allegations show that the intentional theft of data by "rogue" employees of TaskUs (a subcontractor for Ledger's subcontractor Shopify) was not an *avoidable* cause for a data security incident. The latter issue cannot be cured through amendment.

Finally, Seirafi has not corrected the fatal defect with his proposed California Consumer Subclass: it still contains members who *have not* been—and *could not* have been—injured. For example, it includes individuals (i) who purchased Ledger wallets from authorized resellers and therefore did not provide their contact information to Ledger, (2) whose information was provided to Ledger but not accessed by criminals, and (3) who purchased a hardware wallet *after* Seirafi alleges criminal accessed transaction records. The Court struck Seirafi's facially invalid California Consumer Subclass in its last Order. It should do so again.

Seirafi's failure to state a plausible claim after four previous attempts shows that he *cannot* cure the defects Ledger has repeatedly identified. The Court should dismiss Seirafi's claims against Ledger in their entirety—this time, with prejudice.

## II.    FACTUAL BACKGROUND

### A.    Ledger Was the Victim of Two Security Incidents

The TAC discusses two *separate* data security incidents, one involving Ledger's website and one involving rogue employees of TaskUs, which Ledger's service provider Shopify (not Ledger) had engaged. (TAC ¶¶ 9-11, 119.) The incidents are distinct:[1]

- **TaskUs incident**: Between April and June 2020, two rogue TaskUs employees exported Ledger customer transactional records that had been provided to TaskUs though Shopify's e-commerce services. (TAC ¶¶ 10-11.)

- **Ledger cyber-attack**: On June 25, 2020, an unauthorized third party gained access to a portion of Ledger's e-commerce and marketing database through an API key. (*Id.* ¶ 119.)

---

[1] Although Ledger has repeatedly pointed out the distinction between the two incidents (*see, e.g.*, ECF No. 58 at 3; ECF No. 114 at 3), Seirafi continues to conflate them at times (*see e.g.*, TAC ¶¶ 114-15).

Seirafi defines the term "Data Breach" in the TAC to mean **only** the TaskUs incident. (*Id.* ¶ 101 ("At some point in the 2020s, the California man obtained access to the personal information of Ledger's customers and acquired and exported Ledger's customer transactional records (the 'Data Breach').");* see also id.* ¶¶ 12, 13 (first use of "Data Breach," referring to the TaskUs incident).)

**B.     This Is Seirafi's Fifth Opportunity to Plead a Claim Against Ledger**

Seirafi sued Ledger over the disclosure of his contact information for the first time in a related case filed on January 8, 2021, in the Los Angeles Superior Court. (*Seirafi v. Ledger Techs., Inc.*, No. 21STCV00877 (LA Cnty. Super. Ct.).)  In that case, Seirafi asserted claims under the UCL and CLRA, among other causes of action.  Ledger removed to the District Court for the Central District of California and moved to dismiss. (*Seirafi v. Ledger Techs., Inc.*, No. 2:21-cv-01692-AB-MAA (C.D. Cal. Mar. 9, 2021), ECF Nos. 1, 12.)  With the benefit of Ledger's motion, Seirafi filed a first amended complaint there on March 30, 2021. (*Id.*, ECF No. 17.)  Seirafi then voluntarily dismissed the Central District of California case and joined this case.

Seirafi entered this case in the First Amended Complaint ("FAC") filed on June 9, 2021. (ECF No. 33.)  Seirafi and other plaintiffs asserted claims against Ledger under the UCL, CLRA, and other statutes, individually and on behalf of several proposed classes, including a California Consumer Subclass. (*Id.*)  This Court dismissed all of the claims against Ledger for lack of personal jurisdiction. (ECF No. 79 at 7-12.)  Seirafi and other plaintiffs appealed.  The Ninth Circuit reversed the dismissal of Seirafi's California consumer law claims, but otherwise affirmed the dismissal of the claims against Ledger.  *Baton v. Ledger SAS*, No. 21-17036, 2022 WL 17352192, at *2 (9th Cir. Dec. 1, 2022).  Seirafi then filed a Second Amended Complaint ("SAC") on December 7, 2023. (ECF No. 110.)  Again, he asserted claims against Ledger under the UCL and CLRA. (ECF No. 110.)  This Court partially dismissed Seirafi's claims against Ledger on July 16, 2024. (ECF No. 148 ("Order on Motion to Dismiss SAC").)  Seirafi then filed the TAC, once again asserting UCL and CLRA claims against Ledger, individually and on behalf of a California Consumer Subclass.

**C.    The Court Trimmed Seirafi's Already Narrow Claims in the SAC**

In its Order on the Motion to Dismiss the SAC, the Court (i) rejected Seirafi's basis for Article III standing for injunctive relief, (ii) found that Seirafi could not state a claim based on alleged misrepresentations by Ledger, (iii) deferred judgment on the adequacy of Seirafi's remedy at law under *Sonner*, and (iv) struck the proposed California Consumer Subclass.  (Order on Motion to Dismiss SAC at 75.)  As to Seirafi's standing for injunctive relief, the Court explained that Seirafi had not alleged an "actual and imminent" threat of future harm because he had not alleged that he sought to "purchase Ledger's products in the future or otherwise rely on Ledger's advertisements or labels."  (*Id.* at 24-25.)

Regarding the alleged misrepresentation, the Court found that none of the statements identified in the SAC was likely to deceive or confuse the public.  (*Id.* at 52-56.)  The Court listed three reasons:

- **Ledger's privacy policy contains admonitory language**: "[C]onsumers could not have been misled into thinking that providing Ledger with the PII online would be fully secure" because "Ledger disclosed that any information inputted on the Internet is 'not fully secure.'"  (*Id.* at 54.)

- **Representations about Ledger's hardware wallets were not misleading**: "Ledger's representations regarding the security of its hardware wallets do not pertain to the security of Mr. Seirafi's PII which was not on the hardware wallet at all."  (*Id.*)

- **Ledger's representations about data breaches were not misleading**: "Since Shopify did not announce [the TaskUs security incident] to Ledger until December [2020], Ledger could not have noticed its customers of Shopify's involvement in the incident in May and July."  (*Id.* at 55-56.)

The Court also noted that Seirafi was required to allege "actual reliance" for his allegations based on misrepresentations and omission, but it did not further analyze that issue.  (*Id.* at 56 n.15.)

Finally, as to the proposed California Consumer Subclass, the Court found it appropriate to strike the class allegations because Seirafi's claims were not typical of the proposed class.  Specifically, the proposed class included "individuals who purchased a Ledger wallet after the security incidents occurred and were thus [presumably] aware of the allegedly 'inadequate' security practices at the time of their purchase."  (*Id.* at 26.)  The Court did not address the other categories of individuals (identified in Ledger's motion) that could not have been injured.  (*Id.*)

The Court gave Seirafi leave to amend the complaint to cure the defects described above.

**D.      Seirafi's TAC Largely Repeats the SAC**

Besides repeating many of the same claims from the SAC, Seirafi adds in the TAC a mix of conclusory, implausible, and incoherent new allegations.  For example, he now alleges that he "would purchase Ledger products again in the future if Ledger's products, e-commerce, and support services actually maintained the level of security that Ledger promises to uphold—extending to Ledger's vendors as well." (TAC ¶¶ 23, 109.)  Seirafi, however, alleges no facts to support the claim that Ledger's products and services do not live up to Ledger's promises, and he does not specify how far in the future he would purchase the products again.

Seirafi also alleges three new statements by Ledger, though he does not allege he saw or relied on any of them.  First, he alleges that Ledger made various representations in a short advertisement for the Ledger Nano X on YouTube.  (*Id.* ¶ 93.)  Second, he cites Ledger's privacy policy dated July 31, 2018 (as captured by web.archive.org on March 31, 2019), quoting various parts and alleging that Ledger omitted disclosing that "customer information would be entrusted to an outsourcing operation that employs individuals located in overseas locations like the Philippines and that Ledger provides no meaningful oversight of such subcontractors." (*Id.* ¶¶ 242, 259.)  The July 31, 2018 privacy policy, like the July 28, 2020 privacy policy cited in the SAC, warns that "transmission of information on the Internet is not fully secure." (*Id.* ¶ 242 n.61 (citing Ledger's privacy policy).)  Third, mixing up the two separate security incidents, Seirafi alleges that Ledger should have investigated "API Key activity in its systems" before it made a statement about rumors that Shopify's database had been hacked, *i.e.* in the incident involving rogue TaskUs employees, in May 2020.  (TAC ¶ 115.)

Finally, Seirafi slightly modifies the proposed California Consumer Subclass by limiting it to "prior to December 21, 2020." (TAC ¶ 187.)  The proposed class now includes all California residents "who purchased a Ledger Nano X wallet or a Ledger Nano S wallet from Ledger or an authorized reseller within the limitations period, as may be extended or tolled by any applicable rule of law or equitable doctrine, prior to December 21, 2020," regardless of whether their contact information was conveyed to Ledger or whether it was accessed by criminals.  (*Id.*)

The statutory violations Seirafi asserts remain the same.  Seirafi continues to assert claims

under the CLRA and under the "unfair," "unlawful," and "fraudulent" prongs of the UCL. (TAC ¶¶ 215-268.) As in the SAC, Seirafi's CLRA claim and "fraudulent" UCL claim rely only on alleged misrepresentations by Ledger. (*Id.* ¶¶ 240, 257.) Seirafi's "unfair" and "unlawful" UCL claims rely on both the alleged misrepresentations and on an allege failure by Ledger to "implement and maintain reasonable security measures to protect [his] . . . personal information from unauthorized disclosure, release, data breaches, and theft, which was a direct and proximate cause of **the Data Breach**." (*Id.* ¶¶ 225, 229, 234, 237.) Because Seirafi defines the "Data Breach" as only the TaskUs incident, his UCL claim regarding Ledger's security measures only challenges whether Ledger took reasonable steps to prevent the TaskUs incident.

## III.    ARGUMENT

### A.    Seirafi Does Not Have Standing to Seek Injunctive Relief

The court must dismiss Seirafi's claims under Rule 12(b)(1) if he does not have Article III standing. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). Seirafi "bears the burden of showing that the Article III standing requirements are met." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (*en banc*). He must demonstrate standing for each form of relief he seeks. *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008). To seek injunctive relief, Seirafi "must demonstrate that [he is] 'realistically threatened by a *repetition* of the violation.'" *Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006). The "threatened injury must be *certainly impending* to constitute injury in fact, and allegations of possible future injury are not sufficient.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). "[P]ast wrongs do not in themselves amount [a] real and immediate threat of injury necessary to make out a case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983).

The Court has already considered Seirafi's request for injunctive relief against further misrepresentations and dismissed it, providing explicit instructions as to how to correct his complaint. The Court, citing *Davidson v. Kimberly-Clark Corp.*, highlighted that Seirafi had failed to "allege that he seeks to purchase Ledger's products in the future or otherwise rely on Ledger's advertisements or labels." (Order on Motion to Dismiss SAC at 24-25.) Seirafi has

added allegations to that effect in his Third Amended Complaint, stating in rote and conclusory fashion that he will indeed purchase Ledger's products in the future. (TAC ¶¶ 23,109.) Specifically, he alleges: "Seirafi would purchase Ledger products again in the future if Ledger's products, e-commerce, and support services actually maintained the level of security that Ledger promises to uphold—extending to Ledger's vendors as well." (*Id.* at ¶ 23.) Broad-sweeping buzzwords—"products, e-commerce, and support services"—and the absence of any specifically alleged promises on the part of Ledger render the meaning of this allegation entirely unclear. Nor is it clear when Seirafi would repurchase a Ledger product, even if Ledger were to meet his vague preconditions.

Moreover, simply repeating the magic words in *Davidson* is not enough here, where the facts are materially different. *Davidson* stands for the proposition that a "previously deceived consumer ***may*** have standing to seek an injunction against ***false advertising or labeling***." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018) (emphasis added). The Ninth Circuit held that the plaintiff in *Davidson* "adequately allege[d] that [defendant]'s use of the word 'flushable' was false." *Id.* at 972. Here, there is no such predicate false alleged statement to give rise to standing for injunctive relief. The Court has already found that Ledger's alleged advertisements—about the safety of customer's privacy, about the safety of its hardware wallets, and about the data breach—were not false or misleading. (Order on Motion to Dismiss SAC at 52-56.) The TAC does not change that conclusion. (*See infra* Section III.B.1.) Thus, there is no false or misleading advertising to enjoin.

Seirafi's pleadings are also a poor fit for *Davidson* because his allegations of wanting to purchase an expensive, durable technology good necessarily lack any kind of imminence. The plaintiff in *Davidson* alleged that she would be making a decision to purchase a low-cost, regularly-purchased consumable product—a "flushable" wipe—in the *near future*, since she visited stores regularly that sold the product. Seirafi, on the other hand, has not alleged anything other than a desire to purchase a comparatively expensive, durable good that is not purchased on a regular basis—a Ledger hardware wallet—again in some abstract future. (TAC ¶¶ 23, 109.) *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992) (no standing from "[s]uch 'some day'

intentions -- without any description of concrete plans, or indeed even any specification of *when* the some day will be"). Seirafi's allegation is therefore much more like the plaintiffs' similarly conclusory allegation in *Julian v. TTE Tech., Inc.*, whose complaint the Court dismissed for failure to plead an imminent purchase. *See* No. 20-CV-02857-EMC, 2021 WL 810228, at \*9 (N.D. Cal. Mar. 3, 2021) (Chen, J.) (no imminence and therefore no standing "where, as here, the goods are not, e.g., consumable items that are bought on a repeat basis as in *Davidson*, but rather a durable good not typically purchased on a regular basis") (emphasis added).

No amount of artful pleading will allow him to map his claims onto *Davidson*, which requires not one but two things that Seirafi cannot show: (1) a predicate misrepresentation on the part of Ledger and (2) the threat of an imminent purchase of a Ledger product. His request for injunctive relief should be dismissed with prejudice.

### B.     Seirafi Fails to State a UCL or CLRA Claim

A court must dismiss a complaint for failure to state a claim under Rule 12(b)(6) when, as here, Seirafi either fails to state a cognizable legal theory or does not allege sufficient facts establishing a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[C]onclusory allegations without more are insufficient to defeat a motion to dismiss." *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988). Thus, the Court must not assume the truth of legal conclusions merely because they are pleaded in the form of factual allegations, nor should it accept as true allegations contradicted by judicially noticeable facts. *Iqbal*, 556 U.S. at 677-79; *Twombly*, 550 U.S. at 555.

Rule 9(b)'s heightened pleading standard also applies to Seirafi's claims. The Court previously found that the SAC was "subject to Rule 9(b)'s heightened pleading standard." (Order on Motion to Dismiss SAC at 51.) The same is true for the TAC. The crux of Seirafi's UCL and CLRA claims remains that Ledger misrepresented the security of its hardware wallets and that Ledger failed to prevent the incident involving employees of its sub-sub-contractor TaskUs. (TAC ¶¶ 6, 19, 21.) Because each of Seirafi's claims is grounded in fraud, "the pleading . . . as a whole must satisfy the particularity requirement of Rule 9(b)." *Kearns v. Ford Motor Co.*, 567

F.3d 1120, 1124-25 (9th Cir. 2009) (quotations and citation omitted).  All "averments of fraud" must be specifically pled "irrespective of whether the substantive law at issue is state or federal," and even where "fraud is not an essential element of a claim."  *Id.*

### 1.  Seirafi fails to state a claim based on alleged misrepresentations or omissions

As in the SAC, Seirafi's CLRA claim and UCL claim (under all three prongs) rely on alleged misrepresentations and omissions by Ledger.  (TAC ¶¶ 233, 240, 257-59; Order on Motion to Dismiss SAC at 52-53.)  The Court should reject Seirafi's misrepresentation theory again because he still (1) fails to plausibly identify any statements or omissions that are misrepresentations, and (2) fails to identify the purported statements or omissions on which he relied.

### a.  Seirafi still has not identified any statements likely to deceive a reasonable consumer

Seirafi does not allege any new representation by Ledger that could plausibly deceive the public.  In its prior Order, the Court rejected Seirafi's misrepresentation theory because:

- "[C]onsumers could not have been misled into thinking that providing Ledger with their PII online would be fully secure;"

- "Ledger's representations regarding the security of its hardware wallets do not pertain to the security of Mr. Seirafi's PII which was not on the hardware wallet at all;" and

- "Since Shopify did not announce this incident to Ledger until December, Ledger could not have noticed its customers of Shopify's involvement in the incident in May and July."

(Order at 54-56.)  Seirafi alleges only three new representations or omissions in the TAC.  For the same reasons as before, none of the new allegation identifies a plausible misrepresentation.

***First***, Seirafi adds to the TAC a quote and screenshot from a video advertising the Ledger Nano X.  (TAC ¶ 93.)  He does not allege he actually saw or actually relied on the video.  Regardless, the quote and screenshot only refer to the security of Ledger's hardware wallets.  The quote discusses the safety of "crypto currencies" and ends by stating that "***your assets*** should be in good hands.  Yours."  (*Id.* (emphasis added).)  The screenshot shows a hardware wallet and states: "Ledger Nano X [¶] Keep ***your crypto*** secure, everywhere."  (*Id.* (emphasis added).)

These statements and the image of the hardware wallet clearly reference the hardware wallet technology used to secure customers' crypto asset data, not the security of contact information customers provide to Ledger. As the Court already found, the security of Seirafi's hardware wallet does not pertain to the security of Seirafi's contact information because the contact information is "not on the hardware wallet at all." (Order on Motion to Dismiss SAC at 54.) This new allegation does not save Seirafi's claim.

*Second*, Seirafi quotes Ledger's July 31, 2018 privacy policy. (*See* TAC ¶¶ 242, 259.) He also alleges that the privacy policy misleadingly omitted that Ledger "entrusted" customer information to "an outsourcing operation that employs individuals located in overseas locations like the Philippines." (*Id*. ¶¶ 242, 259.) He does not allege he saw the privacy policy or that he would have done anything differently if the privacy policy had disclosed the alleged omission. Nor does he allege that disclosing detailed information about sub-sub-contractors and Ledger's relationship with them in a privacy policy would have been legally required or standard practice. He also ignores that the July 31, 2018 privacy policy has nearly the same admonitory language as the later version of the policy cited in Paragraph 6 of the TAC (and Paragraph 6 of the SAC):

| July 31, 2018 Privacy Policy | Privacy Policy in TAC ¶ 6 and SAC ¶ 6 |
|---|---|
| "We endeavor to do all we can to protect your Personal Data. However, the ***transmission of information on the Internet is not fully secure*** and remains under your sole responsibility. We cannot ensure the security of the transmission of your Data to our Website." | "While we endeavor to provide best-in-class protection for your personal data when you use our Services, please keep in mind that the ***transmission of information on the Internet is not fully secure***." |

(TAC ¶¶ 6, 242 nn.61 (citing Ledger privacy policy) (emphasis added).)[2]

---

[2] Because Seirafi repeatedly references and cites the July 31, 2018 Ledger privacy policy captured by web.archive.org on March 31, 2019 (TAC ¶¶ 242 nn.61-63, 259 nn.66-68), the Court may consider the policy in its entirety. *See, e.g.*, *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1058 n.10 (9th Cir. 2014) (the full text of documents cited in a complaint may be considered even though the complaint quotes only portions of those documents). Moreover, courts routinely recognize corporate websites under the incorporation by reference doctrine where a plaintiff puts a component of the website at issue. *Haskins v. Symantec Corp.*, No. 13-cv-01834-JST, 2013 WL 6234610, at *1 n.1 (N.D. Cal. Dec. 2, 2013) (considering documents from corporate defendant's website).

The Court previously found that the admonitory language in the later version "suggests that Ledger was not misrepresenting that it had impenetrable security, especially for information transmitted on the Internet, such as Plaintiffs' PII." (Order on Motion to Dismiss SAC at 54.) Because "Ledger disclosed that any information inputted on the Internet is 'not fully secure,' . . . consumers could not have been misled into thinking that providing Ledger with their PII online would be fully secure." (*Id.*) The same admonition in the July 31, 2018 policy requires the same conclusion. Accordingly, no reasonable consumer could have been deceived by statements in or omissions from the July 31, 2018 privacy policy.

*Third*, Seirafi incoherently alleges that Ledger should have investigated "API Key activity in its systems" before it made a statement about the TaskUs incident in May 2020. (TAC ¶ 115.) He alleges that Ledger therefore wrongfully omitted or falsely represented information about the investigation in the May 2020 statement. (*Id.*; *see also id.* ¶ 126.) But API activity in *Ledger's systems* in no way relates to the theft of transactional records by TaskUs employees through TaskUs's systems. As Ledger has repeatedly explained (*see, e.g.*, ECF No. 58 at 3; ECF No. 114 at 3)—and Seirafi's other allegations make clear (*see* TAC ¶¶ 10, 119)—there is no relationship between the TaskUs security incident and the *separate* security incident involving unauthorized access to Ledger's e-commerce database. There is no reason for the Court to depart from its well-reasoned finding that "Ledger could not have noticed its customers of Shopify's involvement in the incident in May and July." (Order on Motion to Dismiss SAC at 56.)

The remaining allegations in the TAC about Ledger's statements simply copy the SAC (*e.g.*, *compare* SAC ¶¶ 2-3, 6, 88, 95, 110-12, 129, 132 *with* TAC ¶¶ 2-3, 6, 68, 75, 90-92, 114, 132 (same, respectively)) or reuse the same quotes (*e.g.*, *compare* TAC ¶ 241 (alleging quote about Ledger's "unique digital security infrastructure") and *id.* ¶ 242 (alleging quote about Ledger's implementation of "appropriate physical, electronic and organizational procedures") *with* SAC ¶ 6 (screenshot showing same quote)). As a result, Seirafi still cannot identify any misrepresentations by Ledger.

### b.   Seirafi still has not alleged exposure or reliance

Actual reliance is a necessary element of Seirafi's UCL and CLRA claims "grounded in

misrepresentation or deception," and Seirafi's failure to plead exposure or reliance is fatal to those claims.  (Order on Motion to Dismiss SAC at 56 n. 15); *see also Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 793 (9th Cir. 2012) (reliance must be pleaded with the particularity required by Rule 9(b) for UCL and CLRA claims sounding in fraud).  Seirafi must allege that he saw an actionable statement and acted based on what he saw.  *See In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2017 WL 3727318, at *28 (N.D. Cal. Aug. 30, 2017) (dismissing fraud-based UCL claim because plaintiffs did not allege that they "actually read" or relied on the alleged misrepresentation); *Baltazar v. Apple, Inc.*, No. CV-10-3231-JF, 2011 WL 588209, at *4 (N.D. Cal. Feb. 10, 2011) (dismissing CLRA claim because plaintiffs had not "alleged that they relied justifiably on [the alleged] misrepresentations") (citations omitted).  Seirafi must allege facts "specific enough to give [Ledger] notice of the particular misconduct which is alleged to constitute the fraud charged." *Ehret v. Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1129 (N.D. Cal. 2014).

Seirafi does not allege he saw or relied on *any* statements after the TaskUs incident, and he does not allege with any particularity *which* advertisement(s) he saw and relied on when he purchased his Ledger hardware wallet.  Instead, he generally alleges he "saw advertisements online" and relied on advertised "data security services" when he bought his Ledger Nano X. (TAC ¶ 23.)  His other allegations are just as vague.  (*See, e.g.*, *id.* ¶ 106 (alleging Seirafi "rel[ied] on the uniform representations made by Ledger"); *id.* ¶ 264 (alleging California Consumer Subclass members "rel[ied] on Ledger's misrepresentations and omissions").)  These allegations do not, for example, distinguish statements exclusively about Ledger's hardware from other statements.  Nor do they state whether the representations Seirafi supposedly relied on are any of the statements identified in the TAC.

Paragraphs 241 and 258 of the TAC highlight the problem with Seirafi's vague allegations.  There, Seirafi quotes an alleged representation about Ledger's "unique digital security ecosystem" and alleges that he "relied on Ledger's data security representations such as this." (*Id.* ¶¶ 241, 258; *see also id.* ¶ 261 (claiming reliance on the statements alleged in Paragraph 258).)  Besides the issue that the phrase "such as" creates a question as to which

representations Seirafi alleges he saw, his own allegations show that he ***could not*** have relied on the quoted statement.  Indeed, Seirafi alleges he purchased his Ledger wallet in March 2019 (*id.* ¶ 23), but he attributes the quote about Ledger's "unique digital security ecosystem" to a Ledger webpage dated November 22, 2019 (*id.* ¶ 3 n.3).

Seirafi therefore fails to plausibly allege exposure or reliance, let alone plead it with the specificity required under Rule 9(b).  The Court should dismiss Seirafi's UCL and CLRA claims based on misrepresentations and omissions for this reason alone.

**2. Seirafi fails to state a claim based on Ledger's alleged failure to prevent the TaskUs Incident**

Seirafi's other theory for his "unfair" and "unlawful" prong claims under the UCL is just as implausible.  Seirafi claims that Ledger erred by "fail[ing] to implement and maintain reasonable security measures to protect" his personal information from disclosure in the TaskUs incident.  (TAC ¶¶ 229, 237.)  But his pleading falls far short of "describ[ing] with reasonable particularity the facts supporting the violation." *Baba v. Hewlett-Packard Co.*, No. C 09-05946 RS, 2010 WL 2486353, at *6 (N.D. Cal. June 16, 2010) ("reasonable particularly" required for "a UCL claim of any kind"); *see also Anderson v. Kimpton Hotel & Rest. Grp., LLC*, No. 19-CV-01860-MMC, 2019 WL 3753308, at *6 (N.D. Cal. Aug. 8, 2019) (dismissing conclusory UCL claim).

*Anderson* is instructive.  There, customers whose data had been stolen in a data breach sued the company under the UCL. *Anderson*, 2019 WL 3753308, at *6.  They alleged that the company "'fail[ed] to use reasonable measures to protect [p]rivate [i]nformation' and failed to 'comply[ ] with applicable industry standards.'" *Id.*  Those allegations were not sufficient. *Id.* The court dismissed the UCL claim because the customers "fail[ed] to allege what 'reasonable measures' [the company] failed to use or how [the company] deviated from or otherwise failed to conform to any industry standard." *Id.*

Seirafi's allegations are no different.  Seirafi does not allege what security measures Ledger failed to use, let alone allege that those measures would have been "reasonable" and would have prevented the TaskUs incident (particularly given that Shopify, an "e-commerce

giant" with "[o]ver one million businesses us[ing] its platform," provided the "e-commerce solution" (TAC ¶¶ 97-99)).  Because the TaskUs incident involved only transaction records stored with TaskUs, Seirafi's allegations regarding Ledger's controls over its internal e-commerce database are irrelevant.  (*See id.* ¶ 168 (alleging Ledger should have archived or deleted its customer data).)  Seirafi's theory therefore relies on a vague claim that Ledger "failed to oversee . . . the handling of the data by TaskUs' agents."  (*Id.* ¶ 15.)  Seirafi fails, however, to identify what Ledger could or should have done to oversee TaskUs, with whom Ledger does not and did not have a direct relationship.

Indeed, Seirafi's own pleading shows that no reasonable additional measures by Ledger would have prevented "rogue" TaskUs employees from stealing the data.  Seirafi alleges that "the key *avoidable* causes for data security incidents are:

- Lack of a complete risk assessment, including internal, third-party, and cloud-based systems and services;
- Not promptly patching known/public vulnerabilities, and not having a way to process vulnerability reports;
- Misconfigured devices/servers;
- Unencrypted data and/or poor encryption key management and safeguarding;
- Use of end-of-life (and thereby unsupported) devices, operating systems, and applications;
- Employee errors and accidental disclosures — lost data, files, drives, devices, computers, improper disposal;
- Failure to block malicious email; and
- Users succumbing to business email compromise (BEC) and social exploits."

(*Id.* ¶ 173 (emphasis in original).)  Seirafi also alleges that companies can prevent data breaches by "continually audit[ing] and reevaluat[ing] their data security practices; being aware of and working proactively to counter cybercriminals' evolving techniques and approaches; and training and re-training their employees."  (*Id.* ¶ 178.)  But Seirafi does not allege the TaskUs incident was caused by *any* of these "avoidable causes."  Nothing in the TAC suggests that the TaskUs incident had anything to do with missing risk assessments, technical vulnerabilities, misconfigured devises, poor data encryption, unsupported technology, employee errors, accidental disclosures, malicious emails, social exploits, poor data security auditing, or lack of employee training.  Far from "errors," "accidental disclosures," or lack of training, Seirafi alleges

the TaskUs breach was an intentional theft by "*rogue*" TaskUs employees.  (TAC ¶ 108.)  Seirafi alleges nothing about the foreseeability or preventability of a covert, intentional act by insiders of a subcontractor of a subcontractor.  Of course, any allegation that the theft was foreseeable would be implausible.  *See Chenault v. Cobb*, No. C 13-03828 MEJ, 2013 WL 6072025, at *3 (N.D. Cal. Nov. 18, 2013) (company could not have foreseen employee's unlawful acts that were outside her scope of employment and violated company rules).

Accordingly, his UCL "unfair" and "unlawful" prong claims based on conclusory allegations that Ledger failed to implement and maintain reasonable security measures must be dismissed.

### 3. Seirafi's request for equitable relief must be dismissed because he does not allege he lacks an adequate remedy at law

Seirafi does not meet the minimum pleading standard to state a claim for equitable relief under *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 841 (9th Cir. 2020).[3]  In *Sonner*, the Ninth Circuit reaffirmed the well-established rule that "[e]quitable relief is not appropriate where an adequate remedy exists at law."  *Id.* at 844 (quoting *Schroeder v. United States*, 569 F.3d 956, 963 (9th Cir. 2009)).  The Ninth Circuit affirmed the dismissal of a claim for restitution under the UCL and CLRA because the plaintiff "fail[ed] to demonstrate that she lack[ed] an adequate legal remedy."  *Id.* at 845.  Although *Sonner* addressed only restitution, "numerous courts in this circuit have applied *Sonner* to injunctive relief claims."  *In re MacBook Keyboard Litig.*, No. 5:18-cv-02813-EJD, 2020 WL 6047253, at *3 (N.D. Cal. Oct. 13, 2020).

While some courts, including this Court, have found *Sonner*'s applicability at the pleading stage "limited" and have waited to revisit it at a later stage, "[m]ost district courts applying *Sonner*" require that "a plaintiff must, at a minimum, *plead* that she lacks adequate remedies at law if she seeks equitable relief.'"  *Johnson v. Trumpet Behav. Health, LLC*, No. 3:21-CV-03221-WHO, 2022 WL 74163, at *3 (N.D. Cal. Jan. 7, 2022) (emphasis in original) (quoting *Guthrie v.*

---

[3] While the Court's prior Order deferred judgment on "whether Mr. Seirafi's CLRA claim is an adequate remedy," it did not address Seirafi's failure to meet the pleading standard for claims for equitable relief.

*Transamerica Life Ins. Co.*, 561 F. Supp. 3d 869, 875 (N.D. Cal. 2021)). Recent district court orders uphold that minimum pleading standard. *See, e.g.*, *Weizman v. Talkspace, Inc.*, 705 F. Supp. 3d 984, 990 (N.D. Cal. 2023) ("[C]ourts in this District have generally required that plaintiffs at least allege the lack of a remedy at law when asserting a UCL claim."); *Hernandez v. DTI GMBH*, No. 21-CV-04065-JST, 2024 WL 3939569, at *6 (N.D. Cal. Aug. 26, 2024) (dismissing claim for equitable relief because plaintiff "fail[ed] to allege that he lacks an adequate legal remedy"). This Court's order in *Nacarino v. Chobani, LLC*, though declining to dismiss equitable claims on a motion to dismiss, is consistent with the prevailing view because the plaintiff there "ple[d] that there is an inadequate legal remedy since she has no other basis to assert damages." 668 F. Supp. 3d 881, 897 (N.D. Cal. 2022) (Chen, J.).

Seirafi, in contrast, has not alleged that damages are inadequate. Rather, his allegations make it clear that he cannot distinguish between the restitution he seeks and damages: "***restitution*** will provide ***damages*** for past harm." (TAC ¶ 268; *see also id.* ¶ 248 (similar).) And although he claims that injunctive relief would provide "different" relief because it would prevent future harm, he does not allege that future harm (if any) could not be compensated by damages. (*Id.* ¶ 268; *see also id.* ¶ 248.) These two failures are fatal to his UCL claim (which provides only equitable relief) and the equitable relief he seeks as part of his CLRA claim. *See Emerson v. N. Tr. Corp.*, No. 23-CV-00241-TLT, 2023 WL 11884593, at *6 (N.D. Cal. Nov. 15, 2023) (dismissing "unfair" UCL claim for restitution and injunctive relief because the plaintiff did not allege that damages were inadequate, "distinguish her damages request from restitution," or explain why damages could not make her whole for ongoing unfair practices).

The Court need not wait to dismiss Plaintiffs' claims for repeated pleading failures.

### C.     In the Alternative, the Court Should Strike Seirafi's California Consumer Subclass

Seirafi's slight change to the California Consumer Subclass definition—limiting it to purchases "prior to December 21, 2020"—does not cure the defects with the class identified in the Court's prior order. Seirafi seeks to assert claims on behalf of a California Consumer Subclass comprising "[a]ll persons residing in California who purchased a [Ledger wallet] from

Ledger or an authorized reseller within the limitations period, as may be extended or tolled by any applicable rule of law or equitable doctrine, prior to December 21, 2020." (FAC ¶ 187.) Despite the opportunity to amend, however, the class definition still has no nexus to Seirafi's claims because it includes consumers who could not have been affected by the TaskUs incident. For example, it includes every person in California who purchased a Ledger wallet:

1. From "an authorized reseller," and thus did not provide their contact information to Ledger;

2. From Ledger before the TaskUs incident, but whose contact information the criminals did not access;

3. From Ledger before December 21, 2020 but after the TaskUs incident (which Seirafi alleges occurred between "April and June or 2020"), and whose contact information therefore the criminals could not have accessed.

As the Court found in its prior Order, it is appropriate to strike an overly broad proposed class early on when problems with the class are facially evident. (Order on Motion to Dismiss SAC at 26-27.) Indeed, several other courts have stricken overly broad proposed classes at the motion to dismiss state. *See Hovsepian v. Apple, Inc.*, No. 08-5788 JF (PVT), 2009 WL 5069144, at *6 (N.D. Cal. Dec. 17, 2009) (striking class allegations when proposed class members could not have experienced alleged harm); *Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1044 (N.D. Cal. 2014) (striking class allegations as overbroad because the proposed class included "employees who are not paid based on the 'piece rate system' that is the focus of Plaintiffs' allegations"); *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 989-90 (N.D. Cal. 2009) (striking allegations of proposed class that lacked standing). The Court should do the same again because Seirafi's overbroad California Consumer Subclass is still at odds with his theory of the case.

**D.     The Court Should Deny Seirafi Leave to Amend After Multiple Attempts to Plead a Viable Claim**

Although leave to amend is to be "freely given when justice so requires," the Court has discretion to deny leave to amend due to "repeated failure to cure deficiencies by amendments previously allowed" and "futility of amendment." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010). "A district court's discretion to deny leave to amend is 'particularly broad' where the plaintiff has previously amended." *Salameh v. Tarsadia Hotel*, 726

F.3d 1124, 1133 (9th Cir. 2013); *see, e.g.*, *Keo v. Coutts*, No. 22-CV-05317-TLT, 2023 WL 9051271, at *5 (N.D. Cal. Dec. 28, 2023) (denying leave to amend first amended complaint because "Plaintiff has already amended her complaint"); *Drevaleva v. Alameda Health Sys.*, No. 22-CV-01585-EMC, 2022 WL 2644076, at *3 (N.D. Cal. July 7, 2022) (dismissing complaint without leave to amend because plaintiff had not cured defects after "three iterations of pleadings"). Amendment is futile if the deficiencies cannot be cured with additional allegations consistent with "earlier assertion[s] made in the same proceeding." *Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014).

Seirafi's failure to allege a plausible claim in now his ***fifth*** complaint shows that he cannot allege one. The Court already found that Seirafi could not assert a misrepresentation claim based on statements (i) in Ledger's privacy policy, (ii) about the safety of Ledger's hardware wallets, and (iii) about the security incidents. The new statements Seirafi alleges in the TAC fall into these same categories and fail to state a claim for the same reasons. (*See, supra*, Section III.B.1.) Nothing in the TAC indicates Seirafi could cure that deficient with yet another attempt. The Court also informed Seirafi that he must allege "actual reliance" for his claims grounded in misrepresentation or omission. (Order on Motion to Dismiss SAC at 56 n.15.) Despite that directive and the fact that Ledger's motion to dismiss the predecessor SAC identified precisely the types of statements missing from Seirafi's complaint, Seirafi fails to do so. (ECF No. 114 at pp. 16-17.) This failure, on his fifth complaint against Ledger, is fatal. Nor is there any amendment, consistent with Seirafi's allegations, that can save his claim that Ledger failed to implement reasonable security measures. His own allegations show that intentional theft by a rogue employee of Ledger's sub-sub-contractor, with whom Ledger did not have any contractual relationship, is not an avoidable cause of data security incidents.

Seirafi has had ample opportunity to plead his claims. Because he still does not—and therefore presumably cannot—allege a plausible claim, leave to amend yet again is not warranted.

///

///

///

## IV.    CONCLUSION

For the reasons set forth above, Ledger respectfully requests that the Court dismiss the UCL and CLRA claims against Ledger with prejudice, or, in the alternative, strike the overbroad California Consumer Subclass.


Dated:        September 19, 2024              MORRISON & FOERSTER LLP


                                              By:    */s/ Purvi G. Patel*
                                                     Purvi G. Patel

                                              ***Attorney for Defendant Ledger SAS***